[No. G029632. Fourth Dist., Div. Three. Aug. 28, 2002.]

STEVEN ROBERT MILLER, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Dennis P. O'Connell for Petitioner.

No appearance for Respondent.

Tony Rackauckas, District Attorney, and Brian Fitzpatrick, Deputy District Attorney, for Real Party in interest.

## OPINION

**MOORE, J.**—During the last three and one-half years, the Orange County District Attorney's Office (the district attorney) has filed three criminal complaints charging petitioner Steven Robert Miller with robbery, first-degree burglary, and automobile theft, conducted three preliminary examinations, and twice dismissed the action on the eve of trial. After the third filing, petitioner unsuccessfully moved to dismiss the complaint, relying on Penal Code sections 1387 and 1387.1.[1] Following the magistrate's denial of his motion to dismiss, petitioner filed a motion to set aside the information. He now seeks extraordinary writ relief from the superior court's denial of this motion. We deny the petition and affirm the magistrate's ruling.

I

### FACTS AND PROCEDURAL HISTORY

The facts of the alleged crime are not relevant to the issues at hand and may be briefly stated: petitioner is accused of entering the home of an elderly man and taking various items of the man's property, including his car. The relevant facts are derived from the procedural history, which is convoluted and not particularly exciting. Those with short attention spans are advised to break out a new highlighter or be prepared to take notes.[2]

*First Filing*

On December 1, 1998, the district attorney filed a three-count complaint, alleging petitioner and Richard William Kuhn committed residential robbery, first degree burglary, and automobile theft. It was further alleged petitioner had multiple prior felony convictions, including two prior serious or violent felony convictions pursuant to the "Three Strikes" law. An amended complaint was filed in November 1999, which added two additional strike priors.

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] On our own motion, we take judicial notice of the superior court files and reporter's transcripts of the trial court proceedings in Orange County Superior Court case Nos. 98WF2821, 00WF0171, 00ZF0085, and 01WF1373. (Evid. Code, §§ 452, subd. (d), 459.)

At the preliminary examination, Jerry Ottoviano, the alleged victim of the crimes, testified that on August 31, 1998, he left his Garden Grove home in the morning for a dental appointment. He returned a few hours later and discovered some damage to the outside of his front door. As he entered his home, two men grabbed him and threw him to the floor. Ottoviano's assailants asked for drugs and money. They tied his feet and hands, took a credit card from his wallet and his car keys, and left the apartment. He later determined they had also taken his car. Ottoviano was unable to identify either of the men.

Elaine Jordan, the Garden Grove Police Department's investigating officer, testified that she talked to petitioner's girlfriend, Debbie Williams, about the car. Williams told Jordan petitioner had parked the car in her garage sometime in September and told her not to drive it. He also told her that he had entered the home of an "old man," pushed him to the ground, tied him up, and taken his car. Petitioner abandoned the car after someone told him the "old man died."

Petitioner admitted to Jordan that he and Kuhn burglarized a home in Garden Grove and were in the process of ransacking the place when the owner came home. He admitted pinning the person to the floor and taking the car and credit card, but claimed Kuhn bound the victim.

At the conclusion of the preliminary examination, the magistrate held petitioner to answer in superior court. Petitioner was arraigned in superior court on a three-count information, which alleged first degree robbery, burglary, automobile theft, five strike priors and four prior serious felony convictions. The trial was set for January 10, 2000.

The case trailed from day to day for several days before the prosecution filed a motion to continue the trial, pursuant to section 1050. This section imposes a duty on the trial courts to expedite all proceedings in criminal cases and to grant continuances only upon a showing of "good cause." (§ 1050, subds. (a), (e).) The prosecuting deputy, Beth Costello, submitted a declaration with the motion in which she stated that Williams's testimony was crucial to her case, but that her investigator, Andrew J. Pedrosa, had been unable to locate and subpoena her. Costello attached a log of Pedrosa's efforts. The log indicated he had begun the search in earnest on January 11 and, over the course of the following five days, made several attempts to contact Williams at her mother's home, by using information provided by Williams's social worker, and through other law enforcement agencies. The

prosecution's motion was denied and the case dismissed, pursuant to section 1385.[3]

*Second Filing*

On January 31, 2000, the prosecution refiled the three-count complaint, which now contained allegations of six strike priors and five prior serious felony convictions. Petitioner was arraigned, pled not guilty, and denied the enhancement allegations. Ottoviano did not testify at the second preliminary examination. Investigator Jordan again testified to the statements made by Debbie Williams.

On March 9, 2000, the prosecution refiled the three-count information in superior court. After arraignment, the court set the case for trial in June. On July 17, petitioner moved for a continuance. The motion was granted and petitioner's case was continued to August 7.

On August 7, the trial was continued at the request of both parties. It was continued several more times between October 2000 and March 2001. On March 20, the defense announced ready for trial. The prosecutor, Denise Alexander, stated she was not ready to proceed because Williams failed to comply with a subpoena. On March 27, Alexander filed a motion for continuance, pursuant to section 1050.

Alexander submitted a declaration with her motion in which she asserted that Williams had been personally served with a subpoena to appear in court on March 5, failed to appear on that date, and the court issued a bench warrant. Alexander claimed Williams was a "material and necessary witness," and went on to report, "[b]ased on information and belief," the activities of Investigator Pedrosa to locate Williams. According to Alexander, Pedrosa checked Long Beach police records and "periodically checked the jails for Ms. Williams," between January and March 2001. On March 5, he placed four telephone calls to her last known address. On March 16, he and other investigators searched her last known address in Long Beach, California. On March 21, they checked an alternate address in Long Beach. On March 23, the investigators checked additional addresses in Long Beach, Indio, and Santee.[4] Petitioner did not object to Alexander's declaration. He argued the prosecution had no hope of locating Williams and her

---

[3]Section 1385, subdivision (a) provides, in pertinent part, "The judge or magistrate may, either on his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed."

[4]The court also permitted the prosecutor to present additional evidence during an in camera hearing with defense counsel present. The magistrate ordered the transcript of this proceeding sealed. We decline to recount or consider the in camera testimony for purposes of this

testimony was cumulative of the anticipated testimony of another witness. Nevertheless, the court granted the motion and continued the trial to April 16.

On April 4, petitioner moved to dismiss the case, pursuant to section 1382.[5] The motion was denied and petitioner filed a petition for writ of mandate and request for immediate stay from this court. On April 13, we issued a stay and ordered the sealed transcript of the March 29 in camera hearing. On May 22, this court issued an alternative writ of mandate directing the respondent superior court to set aside and vacate its April 4, 2001 order denying petitioner's motion to dismiss, or to show cause why a preemptory writ of mandate should not issue. (*Miller v. Superior Court* (June 6, 2001, G028903) [nonpub. opn.].) The court complied with the alternative writ and dismissed the case, pursuant to section 1382.

*Third Filing*

On June 6, 2001, the prosecution refiled the three-count complaint, which now alleged five strike priors and four prior serious felony allegations. Petitioner pled not guilty and denied all enhancement allegations. The court set the matter for a preliminary hearing.

On July 2, petitioner filed a motion to dismiss, pursuant to sections 1387 and 1387.1. Counsel attached five exhibits with the motion, including Alexander's motion to continue, declaration, and the transcript from the hearing on the motion. Alexander appeared for the hearing on the motion. The district attorney requested an in camera hearing to allow Alexander to provide additional information she had concerning Williams's whereabouts. The court denied this request and declined to consider her earlier in camera testimony. Defense counsel did not attempt to call Alexander as a witness or cross-examine her. Following lengthy argument by counsel, the court ruled as follows: "As I see it . . . the argument is there was due diligence . . . [t]here was excusable neglect, and the People have shown due diligence and there was no bad faith or sinister intent on the part of the DA's office or attorneys herein. [¶] . . . [¶] I reviewed the papers and in great detail, and I've heard arguments. Both sides had arguments that involve technicalities, and I agree that there appears to be some delay, but the district attorney's office is alleging that there was due diligence, and there was such excusable neglect. And I don't believe that the District Attorney's office would deliberately engage in a bad faith or sinister type of procedure. [¶] I'm going to

proceeding since this information was not considered by the magistrate in denying petitioner's subsequent motion to dismiss.

[5]Section 1382 provides for dismissal of a felony action, unless good cause to the contrary is shown, "when the defendant is not brought to trial within 60 days of the defendant's arraignment." (*Id.*, subd. (a)(2).)

deny the motion to dismiss, and we will proceed with the preliminary hearing then." The third preliminary hearing was held immediately following the court's ruling.

*995 Motion*

On August 7, 2001, petitioner filed a motion to set aside the information, pursuant to section 995, subdivision (a)(2)(A), on the ground that he had not been legally committed by the magistrate. The district attorney argued petitioner could not challenge the magistrate's ruling by way of a section 995 motion, but assuming he could, the magistrate correctly denied the motion to dismiss.

On August 17, Debbie Williams was personally served with a subpoena while incarcerated at the Orange County Women's Jail. On August 24, the prosecution filed a first-amended information, alleging the same three substantive charges, 11 strike priors, 10 prior serious felony convictions, and four prior prison terms.

On September 7, the respondent superior court denied petitioner's section 995 motion. Petitioner filed the instant petition for writ of prohibition three days later. We requested informal briefing from the parties. On September 27, we requested additional briefing on whether this court could order a hearing pursuant to section 1387.1 and what effect a hearing would have on the information.[6] On October 19, we issued a stay and alternative writ of mandate. After considering the briefing and oral argument from petitioner and the district attorney, we deny the petition.

## II

### DISCUSSION

Section 1387, subdivision (a) states in relevant part: "An order terminating an action pursuant to this chapter, or Section 859b, 861, 871, or 995, is a bar to any other prosecution for the same offense *if it is a felony or if it is a misdemeanor charged together with a felony and* the action has been previously terminated pursuant to this chapter, or Section 859b, 861, 871, or 995 . . . ." (Italics added.) ■ It is one of many specific statutory provisions implementing the constitutional right to a speedy trial. (*Jones v.*

---

[6] The parties agree the magistrate conducted a full hearing and a second hearing would be inappropriate. Even assuming this court has the inherent authority to order a second hearing, we decline to exercise that authority in this instance. The parties were given ample opportunity to present their respective cases and the magistrate addressed all pertinent issues. Thus, a second hearing would not promote or serve the interests of justice.

*Superior Court* (1970) 3 Cal.3d 734, 738 [91 Cal.Rptr. 578, 478 P.2d 10] [§§ 1381-1387 establish standards for the dismissal of an action for want of prosecution].) This section sets forth what is sometimes referred to as the "two-dismissal rule": Two dismissals of a felony action bars further prosecution, except in certain specified circumstances.

Section 1387.1 carves out an exception to the two-dismissal rule when the action involves a "violent felony," as defined in section 667.5. Under section 1387.1, a third filing is permitted where (1) either of the prior dismissals was "due solely to excusable neglect," and (2) the conduct of the prosecution did not "amount[] to bad faith." " '[E]xcusable neglect' includes, but is not limited to, error on the part of the court, prosecution, law enforcement agency, or witnesses." (§ 1387.1, subd. (b).)

The prosecution relied on section 1387.1 to defend against petitioner's motion to dismiss. Petitioner claims the prosecution failed to present any evidence demonstrating excusable neglect and lack of bad faith. Incorporated in his argument are several questions regarding the allocation and weight of the burden of proof under section 1387.1. The district attorney argues petitioner improperly sought review of the magistrate's ruling by filing a section 995 motion to set aside the information, but assuming review is nevertheless available, the evidence is sufficient to support the magistrate's ruling, regardless of who bore the burden of proof.

As will be discussed more fully below, we conclude petitioner utilized the correct procedural vehicle to obtain review of the magistrate's ruling. Nevertheless, we find no error in the magistrate's denial of petitioner's motion to dismiss. Therefore, the matter is remanded for further proceedings.

*Section 995*

The district attorney first contends petitioner's section 995 motion was "misplaced" and improper because the hearing on the motion to dismiss was not conducted during the preliminary examination. Generally, "Cases involving motions under Penal Code section 995 are simply not applicable where the error is unascertainable from the preliminary hearing transcript or not known until after conviction. . . . [Citation.]" (*Merrill v. Superior Court* (1994) 27 Cal.App.4th 1586, 1596 [33 Cal.Rptr.2d 515].) Here, the court conducted the hearing on petitioner's motion to dismiss immediately before the preliminary hearing. Any error is ascertainable from the combined transcript, which includes the preliminary hearing.

Further, pursuant to section 995, subdivision (a)(2)(A), an information may be set aside when the "defendant had not been legally committed by a

magistrate." "It is settled that denial of a substantial right at the preliminary examination renders the ensuing commitment illegal and entitles a defendant to dismissal of the information on timely motion." (*People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 523 [165 Cal.Rptr. 851, 612 P.2d 941].) The right to a speedy trial is a substantial right. (*Townsend v. Superior Court* (1975) 15 Cal.3d 774, 781 [126 Cal.Rptr. 251, 543 P.2d 619].) Under the facts of this case, petitioner correctly sought review of the magistrate's ruling by filing a section 995 motion to set aside the information.

■ Conversely, "when a statutory provision bars the prosecution of a criminal action, such a statute 'cannot be given its proper effect unless it too is recognized as a proper basis for quashing an indictment [or setting aside an information].' [Citations.]" (*People v. McGee* (1977) 19 Cal.3d 948, 968, fn. 9 [140 Cal.Rptr. 657, 568 P.2d 382], quoting *People v. King* (1967) 66 Cal.2d 633, 645 [58 Cal.Rptr. 571, 427 P.2d 171]; see also 4 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Pretrial Proceedings, § 238, p. 448.) Section 1387 generally bars a third prosecution of a felony, and certainly bars further prosecution when section 1387.1's prerequisites are not met. ■ "The predominant purpose of section 1387 is to establish some limit to a defendant's period of potential criminal liability, thereby avoiding harassment and discouraging prosecutorial forum-shopping. [Citation.]" (*People v. Peters* (1978) 21 Cal.3d 749, 758-759 [147 Cal.Rptr. 646, 581 P.2d 651] (dis. opn. of Mosk, J.), overruled on other grounds in *Landrum v. Superior Court* (1981) 30 Cal.3d 1, 14 [177 Cal.Rptr. 325, 634 P.2d 352].) To give full effect to the purpose of section 1387, review of the magistrate's decision is available by way of a nonstatutory motion to set aside the information when the motion is not heard in conjunction with the preliminary hearing. (See *People v. Superior Court (Quinteros)* (1993) 13 Cal.App.4th 12, 15 [16 Cal.Rptr.2d 462] [defendant filed a nonstatutory motion to set aside the information challenging the denial of his motion to dismiss]; *People v. Woods* (1993) 12 Cal.App.4th 1139, 1147-1148 [15 Cal.Rptr.2d 906] [defendant filed a nonstatutory motion to dismiss in the superior court and the prosecution appealed from an order granting the motion].)

*Standard of Review*

■ The standard of the review is the same under either the statutory or nonstatutory motion to set aside the information. (*People v. Woods, supra*, 12 Cal.App.4th at p. 1147.) "Upon review of a motion to set aside an information, [the reviewing] court disregards the superior court's ruling and directly examines that of the magistrate. [Citation.] We, like the superior court, must draw every legitimate inference in favor of the magistrate's ruling and

cannot substitute our judgment on the credibility of witnesses or weight of the evidence." (*People v. Eid* (1994) 31 Cal.App.4th 114, 125 [36 Cal.Rptr.2d 835]; accord, *People v. Laiwa* (1983) 34 Cal.3d 711, 718 [195 Cal.Rptr. 503, 669 P.2d 1278]; *Tapp v. Superior Court* (1989) 216 Cal.App.3d 1030, 1036 [265 Cal.Rptr. 267]; see also 5 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Criminal Trial, § 424, p. 603.) A reviewing court cannot disturb an exercise of discretion unless it is "arbitrary, capricious, or patently absurd." (*People v. Jordan* (1986) 42 Cal.3d 308, 316 [228 Cal.Rptr. 197, 721 P.2d 79].) We make no such finding here.

*Excusable Neglect*

■ The term "excusable neglect" in section 1387.1 is given the same construction in criminal cases as it has been given in civil cases. (*Tapp v. Superior Court, supra,* 216 Cal.App.3d at pp. 1035-1036.) " 'Simply expressed, "[e]xcusable neglect is neglect that might have been the act or omission of a reasonably prudent person under the same or similar circumstances." ' [Citation.]" (*People v. Massey* (2000) 79 Cal.App.4th 204, 211 [93 Cal.Rptr.2d 890].) It is in *Massey* that we find the best definition of the term.

In *Massey,* the magistrate granted the defendant's motion to dismiss pursuant to section 1387.1. The prosecution filed an unsuccessful motion to reinstate the complaint in superior court. On appeal, the prosecution argued the magistrate misinterpreted the term "excusable neglect" by requiring the prosecution to prove actual neglect or error. The appellate court agreed. "The 'neglect' under section 1387.1 was the failure of the People to have the witnesses in court on the date set for the first trial. This neglect was 'excusable' because reasonable efforts had been made to secure the witnesses' attendance." (*People v. Massey, supra,* 79 Cal.App.4th at p. 211.) " '[I]f the police and prosecution had done all that could be reasonably expected to locate their witnesses and get them to court, and yet not succeeded, then, so far as concerns the construction of section 1387.1, their failure should still be labeled *excusable neglect,* despite the absence of any actual *neglect,* as commonly understood to include an element of carelessness or lack of sufficient regard or effort.' " (*Ibid.*)

■ Despite petitioner's protestation to the contrary, the prosecution did make reasonable efforts to secure Williams's attendance at trial. Alexander's declaration recounted repeated efforts to locate Williams. Investigator Pedrosa "periodically check[ed] the jails for Ms. Williams" and Long Beach police records for months before the trial. Someone from the prosecution team managed to subpoena Williams for the March 5 trial date. When she

failed to appear in court on that date, Pedrosa repeatedly telephoned her last known address and drove to the location. He subsequently checked an alternate address in her hometown and additional addresses in other cities. This constitutes reasonable efforts to locate a recalcitrant witness. Thus, the second dismissal was the result of excusable neglect as defined in section 1387.1.

Petitioner claims the district attorney presented no evidence at the hearing on his motion to dismiss. While true, it is not fatal to the district attorney's case. Petitioner submitted five exhibits with his motion to dismiss, including Alexander's motion to continue, her declaration, and the transcript from the hearing on the motion. These documents constitute " '[e]vidence' . . . offered to prove the existence or nonexistence of a fact." (Evid. Code, § 140.) Although petitioner now challenges the adequacy of Alexander's declaration, he did not raise this objection in the trial court. Consequently, the issue is waived for appeal. (Evid. Code, § 353, subd. (a); *Tapp v. Superior Court, supra,* 216 Cal.App.3d at pp. 1036-1037.)

Further, there is an alternative basis for finding excusable neglect in the inadequacies of Alexander's declaration. Section 1050 provides, in pertinent part, "To continue any hearing in a criminal proceeding, including the trial, (1) a written notice shall be filed and served on all parties to the proceeding at least two court days before the hearing sought to be continued, *together with affidavits or declarations detailing specific facts showing that a continuance is necessary . . . .*" (Italics added.) Alexander's declaration was not based on personal knowledge and, therefore, technically inadequate. (Evid. Code, § 701; *Tapp v. Superior Court, supra,* 216 Cal.App.3d 1030, 1036-1037.) The failure to file a technically correct affidavit in support of her motion to continue would constitute excusable neglect in any event. (*Tapp v. Superior Court, supra,* 216 Cal.App.3d at p. 1036.)

Petitioner also claims his own failure to formally introduce into evidence the exhibits attached to his motion precluded the court from relying on them. Not so. "It is well established . . . that when a document has been considered by the court and the parties as being in evidence, the fact that no formal offer in evidence was made will not exclude it from consideration as part of the record on appeal. [Citations.] 'Where documents are not formally introduced, but it is apparent that the court and the offering party understood that they were in evidence, they must be so considered.' [Citation.]" (*Reed v. Reed* (1954) 128 Cal.App.2d 786, 790-791 [276 P.2d 36].)

Although our research failed to uncover a published case directly addressing the applicability of this rule of civil procedure to a criminal prosecution,

section 1102 provides, "The rules of evidence in civil actions are applicable also to criminal actions, except as otherwise provided in this Code." The parties and the court relied on petitioner's exhibits during the extended argument on his motion. At the time, no objection was made to Alexander's declaration. The court and the parties overlooked the technical defects of the declaration and the time to complain about the admissibility of this evidence is long past. (See *Tapp v. Superior Court, supra,* 216 Cal.App.3d at p. 1037.) No other Penal Code section mandates a different result.

We also reject petitioner's related claim that the admission of Alexander's declaration deprived him of the right to confront and cross-examine witnesses against him. Assuming this right attaches at pretrial proceedings (see *Whitman v. Superior Court* (1991) 54 Cal.3d 1063, 1079 [2 Cal.Rptr.2d 160, 820 P.2d 262]), there is no violation of the federal or state constitutional right of confrontation when the witness is available for cross-examination. (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1118-1119 [36 Cal.Rptr.2d 235, 885 P.2d 1].) As noted above, Alexander was available for cross-examination at the hearing on petitioner's motion.

*Bad Faith*

As might be expected, the parties disagree as to whether the prosecution proved an absence of "bad faith" in the third filing of the charges. Specifically, petitioner contends, "As of the date of the third filing of this case the [prosecution] still had no idea where Miss Williams was. In other words the matter was filed a third time without having first located the main witness." This assertion is unsupported by an appropriate record reference. "If a party fails to support an argument with the necessary citations to the record, that portion of the brief may be stricken and the argument deemed to have been waived. [Citation.]" (*Duarte v. Chino Community Hospital* (1999) 72 Cal.App.4th 849, 856 [85 Cal.Rptr.2d 521]; *People v. Hyatt* (1971) 18 Cal.App.3d 618, 624 [96 Cal.Rptr. 156] [citing former Cal. Rules of Court, rule 15(a), now rule 14(a)(1)(C)].) Thus, we could consider this contention waived, but it is meritless in any event.

Section 1387.1 does not define "bad faith." This is unfortunate since it has been observed that bad faith "is recognized as an 'amorphous concept' [citation] which 'necessarily varies with the context' [citation] and thus has 'no generally accepted "correct" definition.' [Citation.]" (*Walbook Ins. Co. v. Liberty Mutual Ins. Co.* (1992) 5 Cal.App.4th 1445, 1455 [7 Cal.Rptr.2d 513].) However, the rules of statutory construction guide our resolution of the issue.

Our role in construing a statute is to " 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] The words

of the statute are the starting point. 'Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' [Citation.]" (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727].)

Black's Law Dictionary defines "bad faith" as "[d]ishonesty of belief or purpose." (Black's Law Dict. (7th ed. 1999) p. 134, col. 2.) It is the opposite of "good faith," which is defined as "[a] state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage." (Black's Law Dict., *supra*, at p. 701, col. 1.) The word is prevalent in various areas of the law. (*Hudson v. Zumwalt* (1944) 64 Cal.App.2d 866, 872 [149 P.2d 457] ["It is sufficient [to demonstrate malice] if it appears that the former suit was commenced in bad faith to vex, annoy or wrong the adverse party."]; *Hersch v. Citizens Savings & Loan Assn.* (1983) 146 Cal.App.3d 1002, 1011 [194 Cal.Rptr. 628] ["Bad faith . . . would have to be described as '[dis]honesty in fact in the conduct or transaction concerned.' (See Cal. U. Com. Code, § 1201, subd. (19) defining good faith.)"]; *Broadman v. Commission on Judicial Performance* (1998) 18 Cal.4th 1079, 1093 [77 Cal.Rptr.2d 408, 959 P.2d 715] ["In this context [prejudicial conduct on the part of a judicial officer], bad faith means a culpable mental state beyond mere negligence and consisting of either knowing or not caring that the conduct being undertaken is unjudicial and prejudicial to public esteem."]; *Evans v. California Trailer Court, Inc.* (1994) 28 Cal.App.4th 540, 553 [33 Cal.Rptr.2d 646] ["Bad faith waste is reckless, intentional or malicious injury to the property and is distinguishable from waste caused by mortgagors who are subject to the economic pressures of a market depression. [Citation.]"].)

We presume the Legislature was aware of these various definitions when it enacted section 1387.1. ▉▉▉ Despite its amorphous quality, the term "bad faith" communicates an easily recognized circumstance. It is a situation where one party commits acts with the purpose and intent to cause harm to another, or with a conscious disregard of the welfare of the other party, with full knowledge of the negative consequences of his or her actions. Nothing approaching bad faith is revealed in this record. True, the district attorney had unusual difficulty locating and serving Williams, but there is an explanation for this failure that has nothing to do with prosecutorial harassment, i.e., her relationship with petitioner. The district attorney may not have employed heroic efforts to secure Williams's attendance at trial, but there is

no evidence of an intentional mishandling of the process to annoy or vex petitioner. Nor are we persuaded the district attorney had reason to believe Williams would not be found before trial. The prosecution team has managed to twice serve Williams with a subpoena. Chances are at least even they will be able to locate and secure her attendance at a future trial. In short, we find no bad faith on the part of the prosecution.

■ Further, "The prosecution of criminal offenses on behalf of the People is the sole responsibility of the public prosecutor. [Citations.] [¶] The prosecutor ordinarily has sole discretion to determine whom to charge, what charges to file and pursue, and what punishment to seek. [Citation.] . . . An individual exercise of prosecutorial discretion is presumed to be ' " 'legitimately founded on the complex considerations necessary for the effective and efficient administration of law enforcement. . . .' " ' [Citations.]" (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 451-452 [279 Cal.Rptr. 834, 807 P.2d 1063]; see also Cal. Const., art. V, § 13; Gov. Code, §§ 100, subd. (b), 26500.) Petitioner's bald assertion of prosecutorial bad faith without evidence to support his claim is insufficient to overcome the presumption the prosecutor properly exercised his or her discretion in refiling criminal charges for the third time.

*Burden of Proof*

Finally, petitioner posed two questions concerning the allocation and weight of the burden of proof when the prosecution relies on section 1387.1: (1) Who bears the burden of proof at the hearing on a motion to dismiss; and, (2) what is the standard of proof? The prosecution contends any discussion of the issue would be irrelevant since this court reviews the challenged order under the deferential abuse of discretion standard, but in any event, defendant bore the burden of proof. While the prosecution has correctly divined our role as an appellate court, the parties' disagreement over the issue and dearth of authority to support either position prompts us to provide some guidance to criminal law practitioners at the trial court level.

Section 1387.1 does not expressly answer either of petitioner's questions. In fact, it provides no procedural guidance whatsoever. Case law is also of little help. In *Woods*, the prosecution filed a motion to permit the filing of a third criminal complaint, and presented testimonial and documentary evidence in support of the motion. (*People v. Woods, supra,* 12 Cal.App.4th at p. 1147.) In *Quinteros*, the defendant filed a motion to dismiss the information in conjunction with a section 995 motion to set aside the information, but the opinion does not make clear which party presented evidence at the

hearing on the motion to dismiss. (*People v. Superior Court* (*Quinteros*), *supra*, 13 Cal.App.4th at p. 16.) In *Tapp*, the defendant sought extraordinary writ relief immediately following the third filing of the action. The defendant raised the burden-of-proof issue in his petition, but this court did not specifically address or resolve the issue in its opinion. (*Tapp v. Superior Court, supra*, 216 Cal.App.3d at p. 1034.)

Only *People v. Massey, supra*, 79 Cal.App.4th 204, provides some guidance on the issue. In *Massey*, the prosecution filed a third complaint and defendant moved to dismiss the action, arguing a third prosecution was barred under section 1387. At the hearing on the defendant's motion, the magistrate "preliminarily found the charged offense was a violent felony under section 667.5, there had been two prior dismissals, and the People had the burden to show excusable neglect to justify the third prosecution." (*People v. Massey, supra*, 79 Cal.App.4th at p. 208.) The prosecution called the investigating officer to testify to facts concerning his efforts to locate a witness and his miscommunication with the prosecuting deputy district attorney regarding the availability of that witness. (*Id.* at pp. 208-209.) Neither party contested the magistrate's assignment of the burden of producing evidence to the prosecution. Although this dictum carries no precedential value, for reasons more fully discussed below, we believe the magistrate's allocation of the burden of proof was logical and correct.

First, there is a distinction between the burden of raising an issue, the burden of producing evidence, and the ultimate burden of proof. "By 'burden of raising an issue,' we refer to a party's obligation to bring an issue to the attention of the trial court and the opposing party . . . ." (*People v. Williams* (1999) 20 Cal.4th 119, 128 [83 Cal.Rptr.2d 275].) " 'Burden of producing evidence' means the obligation of a party to introduce evidence sufficient to avoid a ruling against him [or her] on the issue." (Evid. Code, § 110.) " 'Burden of proof' means the obligation of a party to establish by evidence a requisite degree of belief concerning a fact in the mind of the trier of fact or the court." (Evid. Code, § 115.) The "requisite degree of belief" varies depending on the proceeding, but "proof by a preponderance of the evidence" is sufficient unless otherwise provided for by law. (*Ibid.*)

The district attorney argues the burden of proof is on the moving party. Although "[g]enerally, the party that has the burden of raising an issue also has the burden of proof with respect to that issue [citation], . . . this usual correlation does not represent an immutable rule. [Citation.]" (*People v. Williams, supra*, 20 Cal.4th at p. 128.) "In a number of situations, reasons of policy, convenience, or mere tradition place the burden in a manner different from that which would normally be expected from the requirement

of pleading. [Citation.] [¶] This is recognized by the proviso in [Evidence Code section] 500 — 'Except as otherwise provided by law' — and by the Comment: 'In determining whether the normal allocation of the burden of proof should be altered, the courts consider a number of factors: the knowledge of the parties concerning the particular fact, the availability of the evidence to the parties, the most desirable result in terms of public policy in the absence of proof of the particular fact, and the probability of the existence or non-existence of the fact.' [Citations.]" (1 Witkin, Cal. Evidence (4th ed. 2000) Burden of Proof and Presumptions, § 10, p. 163.)

■ Section 1387.1 is not an affirmative defense to a crime as that term is commonly applied in the criminal law. (See 1 Witkin & Epstein, Cal. Criminal Law (3d ed. 2000) Defenses, §§ 1-254, pp. 334-620.) Rather, section 1387's two-dismissal rule provides a procedural safeguard against multiple prosecutions for the same offense. (See *In re Troglin* (1975) 51 Cal.App.3d 434, 439 [124 Cal.Rptr. 234].) Logically, since the prosecution is procedurally barred from proceeding with a third prosecution except in limited circumstances, it should bear the burden of establishing the existence of those circumstances. Where, as here, the prosecution has not alerted the court to its reliance on section 1387.1 before the third filing of a criminal complaint,[7] defendant bears the burden of bringing the issue to the court's attention. Section 1387 states two dismissals pursuant to various sections bars retrial on felony charges except in limited circumstances. Therefore, a defendant satisfies his or her pleading requirement by alleging a third filing of a felony complaint after two qualifying dismissals together with authorities stating that none of the statutory exceptions apply.

■ However, in light of the aforementioned policy considerations, if the prosecution relies on section 1387.1, it bears the burden of producing evidence on the following issues: (1) the defendant is charged with a violent felony under section 667.5; and, (2) one of the prior two dismissals was due solely to excusable neglect. As to the first issue, either the charged offense is listed in section 667.5 or it is not. Thus, there is no prejudice in requiring the prosecution to establish this fact. As to the second issue, the prosecution will have greater knowledge of the circumstances leading up to a dismissal of its case and ready access to the evidence needed to establish excusable neglect. Of course, it would be to the defendant's benefit to submit any evidence that tends to explain or rebut the prosecution's proof on these issues.

With respect to the issue of bad faith, there is an evidentiary presumption that official duties are regularly performed. (Evid. Code, § 664.) Where a

---

[7]As stated above, the prosecution in *Woods* took the unusual step of filing a motion for leave to file a third complaint. Although unusual, there is nothing inherently wrong in this procedure and much to commend it.

criminal defendant raises official misconduct as a defense, he or she bears the burden of proof on this issue. (*People v. Catlin* (2001) 26 Cal.4th 81, 134 [109 Cal.Rptr.2d 31, 26 P.3d 357] [burden on defendant to show bad faith on the part of police in destruction of exculpatory evidence claim]; *People v. Cheatham* (1975) 50 Cal.App.3d 592, 598 [123 Cal.Rptr. 361] [defendant has the burden of proving an arrest made with a warrant was unlawful]; *People v. Gray* (1967) 254 Cal.App.2d 256, 265 [63 Cal.Rptr. 211] [the presumption of official conduct operates to require criminal defendant to prove discriminatory enforcement of the law].) Thus, a presumption of good faith operates and defendant bears the burden of rebutting this presumption.

 Finally, since proof by a preponderance of the evidence is generally sufficient (Evid. Code, § 115) and petitioner has provided no authority or persuasive reasoning in support of his argument for the higher proof by clear and convincing evidence standard, we conclude proof by a preponderance of the evidence is sufficient to establish the section 1387.1 exception.

Although the parties here did not follow this formula, the evidence submitted is sufficient to support the magistrate's ruling denying petitioner's motion to dismiss. This ruling is neither arbitrary nor capricious. Thus, there is no basis for reversal.

## III

### DISPOSITION

The alternative writ is discharged and the petition for writ of mandate or other appropriate relief is denied. This court's previously ordered stay is dissolved. The matter is remanded for further proceedings.

Rylaarsdam, Acting P. J., and O'Leary, J., concurred.

A petition for a rehearing was denied September 13, 2002, and petitioner's petition for review by the Supreme Court was denied November 26, 2002.