Filed 5/8/13  P. v. Schmid CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Lassen)

----

| | |
|---|---|
| THE PEOPLE, | C070147 |
| Plaintiff and Respondent, | (Super. Ct. No. CR027919) |
| v. | |
| ERIKA LOUISE SCHMID, | |
| Defendant and Appellant. | |

Members of the Lassen County Narcotics Task Force executed a search warrant on the home in which defendant Erika Louise Schmid lived with her boyfriend and found methamphetamine, drug paraphernalia, and over $1,500 in cash.  Following a jury trial, defendant was convicted of possession of methamphetamine for sale and misdemeanor obstruction of a peace officer.  Defendant admitted three prior prison terms and two strikes.  The trial court struck one of the strikes and one of the prior prison terms, and sentenced defendant to six years in state prison.

On appeal, defendant contends there is insufficient evidence to support her conviction for possession of methamphetamine for sale, the prosecutor committed misconduct during closing argument, and there is insufficient evidence to support the obstructing a peace officer conviction.  We affirm.

1

FACTS

*The Prosecution's Case*

On September 10, 2010, at about 5:50 a.m., members of the Lassen County Narcotics Task Force and Lassen County Sheriff's Department SWAT team executed a search warrant on a home in Doyle. Approximately 14 officers served the warrant, driving up in an armored SWAT vehicle and several patrol cars. Officers went to the door, knocked, and said: "Sheriff's Department, we have a search warrant. We demand entry."

Codefendant Steve Ferris opened the door. Officers entered, detaining Ferris and searching the home for other occupants. As they searched, officers encountered a pit bull that they pepper sprayed, a woman and her child, and a woman and a man in one of the bedrooms.

The officers then conducted a second, more thorough sweep of the house to look for people who might be hiding. They found defendant, seven months pregnant with Ferris's child, hiding under a blanket and holding a flip-style cell phone that was flipped open. The phone both received and sent a call at almost the exact time the warrant was served.

After the second sweep concluded, officers searched the house. The master bedroom contained .17 grams of methamphetamine, a razor blade, and a $20 bill on a mirror in the top drawer of the nightstand next to the right side of the bed. The drawer also had a digital gram scale and small Ziploc baggies with hearts on them. Inside a second drawer was a small pouch containing 8 baggies which each held between .95 and 1.8 grams of methamphetamine.

Underneath the mattress on the right side of the bed, officers found a spoon, a syringe, and a Ziploc baggie with hearts on it which contained a crystalline substance. A black cell phone was on the bed's left side headboard. A backpack with defendant's driver's license was on the floor by the left side of the bed. The backpack contained a

2

small zippered purse which held six or seven pills. The left side nightstand contained an item often used by women for tying up long hair, as well as pills in a heart-shaped baggie and a bottle of pills.

A type of propane torch used to heat methamphetamine pipes was between the nightstand and headboard. A methamphetamine pipe was on the right side of the bed. The bedroom also contained a magazine to an Ithaca .22-caliber rifle, a white sock filled with .22-caliber shells, and indicia in Ferris's name. A .22-caliber Ithaca rifle was in a shed by the main residence.

A video camera in the front of the home broadcast to a monitor in the master bedroom. The armored SWAT vehicle used by the officers could have been seen on the monitor.

A search of Ferris uncovered two syringes and $1,549 in cash in his pockets.

The cell phone found on defendant was a "throw phone," one that did not have any subscriber information. The phone had numerous incoming and outgoing messages referring to drug sales, use, and possession. These messages included: "How much for half a zip";[1] "Shannon says you got this and I'm late with the weed. Well that is why I told you I called and got no answer and no one called back. You know what room they are in"; "I guess I am riding with Eldon, but because things didn't happen as planned earlier, I won't be able to come nowhere near the amount I had earlier"; "Almost to the Mark.[2] It's me, Atlantis, and Tony, I only need two. Come and I won't fail you and Steve now, I'm dedicated chasing paper.[3] Please let this happen, you won't be sorry"; "I'll put that Chevy down as collat" and "then give it to home for half if wanted

---

[1]    An officer testified that "zip" is a reference to methamphetamine.

[2]    A reference to a store in the area.

[3]    A deputy testified that "chasing paper" referred to selling drugs to make money.

3

afterwards"; "500 waiting in town.  It's me, it's me Bri.  I got your pills.  I need 14 and will turn and burn with cash.  I'm just past Janesville.  I really need this so I can make up what I'm short already."

The phone also contained two text messages from September 8 and 9, 2010, stating:  "Dad, please call or come by" and "You alive, Dad?"  After the search warrant was served, the phone received the following messages:  "Hey, mom I love you"; "Hey, Mom, what are you doing for your B day"; "Hey, Mom, I love you with all my heart."  Defendant's birthday is September 24, 1974, and she has a daughter.

Defendant and Ferris were arrested after the search.  Ferris told officers the drugs were Ferris's and intended for sale, and he last made a sale three days before the search.  Defendant tested positive for methamphetamine.

Testifying as an expert, a Lassen County sheriff's deputy said that the methamphetamine in the pouch was possessed for sale.  The deputy based his opinion on packaging the methamphetamine in baggies, the amount of methamphetamine in the baggies, the digital scale, the large amount of cash on Ferris, and Ferris's admitting he had previously sold methamphetamine.

*The Defense*

Testifying, Ferris admitted that the residence searched was his home.  Defendant occasionally stayed with him at the home and kept some clothes there, but it was not her permanent home.  He admitted telling officers that defendant stayed with him on and off for the six months before the search, including the day of the search.

Ferris was addicted to methamphetamine, having used the drug for the last 35 years.  He would use about a gram a day.  The eight bags of methamphetamine were for "[p]ersonal use pretty much, mostly," and would last him about a week.  He used the scale to prevent taking an overdose of methamphetamine.  The $1,549 in his pocket was the proceeds from selling a pickup truck the day before the search.

4

Ferris was under the influence of methamphetamine when he was interviewed by officers following his arrest. He did not remember saying he had sold methamphetamine and was not being truthful if he made such an admission.

On cross-examination, Ferris admitted numerous prior convictions, prison commitments, and parole violations.

*Rebuttal*

In an interview with law enforcement, Ferris admitted selling drugs for several years. He had been together with defendant for a year and one-half, and they lived together off and on for six to eight months, but he then said she had just started living with him a few days before the search. The women's clothing found in his residence belonged to defendant. He was in bed with defendant when they heard the SWAT vehicle. Ferris saw the officers on the bedroom monitor. When they heard the noise, defendant left without saying anything.

DISCUSSION

I

*Substantial Evidence Supports Defendant's*

*Conviction For Possession Of Methamphetamine For Sale*

Defendant contends there is insufficient evidence to support her conviction for possession of methamphetamine for sale. We disagree.

"To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]" (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128.)

The elements of possession of controlled substances for sale are dominion and control of the substance in a quantity usable for sale, with knowledge of the presence and restricted character of the substance. (*People v. Martin* (2001) 25 Cal.4th 1180, 1184.)

5

"Constructive possession exists where a defendant maintains some control or right to control contraband that is in the actual possession of another. [Citation.]" (*People v. Morante* (1999) 20 Cal.4th 403, 417.) "Of course, proof of guilt may be established by circumstantial evidence. [Citation.]" (*People v. Cordova* (1979) 97 Cal.App.3d 665, 669-670.)

Defendant argues there is insufficient evidence showing that she either possessed the methamphetamine or intended to sell it. There was some evidence that the methamphetamine was primarily in Ferris's possession. The methamphetamine was found in the nightstand on the right side of the bed, while the women's items found on the left side nightstand suggested defendant slept on the left side. In addition, the large quantity of cash was found on Ferris.

Other, stronger evidence supports an inference of joint dominion and control. Defendant had been living with Ferris on and off for several months and they shared the bedroom in which the methamphetamine had been found. The jury could reasonably infer that defendant knew the officers were coming to search the residence and fled from them -- Ferris admitted they heard the SWAT vehicle, they could see the vehicle with the bedroom monitor, and Ferris told officers defendant left the bedroom as soon as she heard the vehicle drive up and hid in a closet. Flight from law enforcement is evidence of a guilty mind (Pen. Code, § 1127c; *People v. Garrison* (1989) 47 Cal.3d 746, 773) and therefore supports an inference that defendant was complicit in the possession and sale of the methamphetamine. The jury could also find that the text messages on the phone in defendant's possession were associated with the sale of drugs, which supports an inference that defendant was actively selling the drugs and therefore jointly possessed them with Ferris and intended to sell them. Substantial evidence supports defendant's conviction as a principal for possession of methamphetamine for sale.

The evidence also supports defendant's guilt under the aiding and abetting theory.[4] A person aids and abets the commission of a crime when she, acting with (1) knowledge of the perpetrator's unlawful purpose, and (2) intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates the commission of the crime. (*People v. Croy* (1985) 41 Cal.3d 1, 12; *People v. Beeman* (1984) 35 Cal.3d 547, 561.) The presence of the methamphetamine in the room she shared with defendant, the methamphetamine found in her system, and her flight supports a finding that she knew of the drugs and Ferris's intent to sell them. The text messages on the phone in her possession supports an inference that defendant intentionally aided Ferris's drug selling.[5] Defendant's guilt as an aider and abettor is thus supported by substantial evidence.

## II

### *Defendant's Claim Of Prosecutorial Misconduct Is Forfeited*

Defendant contends the prosecutor committed two instances of prejudicial misconduct in the closing argument.

The first allegation pertains to the following passage discussing the charges against defendant: "Meth in the urine, let's talk about that for a second. Hey, Burns [the prosecutor's last name], why not charge her with child abuse? Well, I'll tell you, Reyes versus Superior Court, a case in the California Court of Appeal which says the child

---

[4] The jury was given the standard instructions on aiding and abetting, CALCRIM Nos. 400 and 401.

[5] Defendant's claim that the prosecutor "muddied the water" about aiding and abetting in the closing argument does not change our analysis. The jury was instructed to follow the court's statements on the law if they conflicted with an attorney's statement, and we assume the jury followed the instruction. (*People v. Hernandez* (2010) 181 Cal.App.4th 1494, 1502.)

7

abuse statute is just that, it's a child abuse statute, not fetus abuse. I am deprived of the authority to make such a charge. And then of course hiding and what that might mean."

The second allegedly improper argument occurred when the prosecutor concluded the argument as follows: "Why is this case important? This case is important -- there is a distinction to be made between possessors and sellers, no questions. Typically society looks upon possessors as those who need attention and those we should dedicate[] resources to help, but in my mind, I believe it's society also makes a significant distinction between those that [*sic*] need the help and those that [*sic*] are pushing it off on others or at least making it available to others. And that's why this case is important is because methamphetamine, the white devil, you see how it affects people, you see how it changed lives. [¶] Mr. Ferris, Mr. Ferris is a classic example of how methamphetamine has dramatically impacted his life over the course of a 35-year addiction, multiple commitments to prison, chicken and the egg, in my opinion, I don't know whether it is commitments to prison the felony convictions or that conduct begets meth use or the meth use begets the criminal behavior, who knows, that's a whole other discussion, but that's why this case is important because the sale of methamphetamine is affecting people for life."

Defendant asserts the references to defendant's using methamphetamine while she was carrying a child and to methamphetamine as the "white devil" constituted prejudicial misconduct.

There was no objection to the alleged misconduct at trial. "As a general rule a defendant may not complain on appeal of prosecutorial misconduct unless in a timely fashion--and on the same ground--the defendant made an assignment of misconduct and requested that the jury be admonished to disregard the impropriety. [Citation.]" (*People v. Samayoa* (1997) 15 Cal.4th 795, 841.) We are obliged to grant relief from a forfeiture only where objections or admonitions would have been futile or the misconduct's nature

8

was incurable, which a defendant must establish affirmatively rather than through a "ritual incantation." (*People v. Panah* (2005) 35 Cal.4th 395, 462.)

Defendant claims her contention is not forfeited because the alleged misconduct is so prejudicial it could not be cured with an admonition. In support of her contention, defendant argues that the alleged misconduct must be considered in light of a "record . . . replete with instances of the prosecutor straddling the line of misconduct," such as portraying codefendant "Ferris as a long-time, drug-dealing loser, and appellant as his drug-using baby mamma," and the interrogating officers' efforts "to get Ferris to admit that [defendant] sold drugs for him."

Defendant does not support her contentions regarding "the prosecutor straddling the line of misconduct" with citations to the appellate record. As such, they are forfeited. (Cal. Rules of Court, rule 8.204(a)(1)(B), (C) [requiring any reference to a matter in the trial court to be supported by a citation to the appellate record]; *Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 743 [lack of adequate citation to the record forfeits the claim of error].)

The contentions are also without consequence. The alleged misconduct referred to facts already admitted at trial (defendant's drug use during her pregnancy), or common knowledge (methamphetamine is a very dangerous drug). Even if the oral argument was in fact misconduct, defendant has not met her burden of showing that it was so egregious as to be incurable by admonition. Accordingly, we conclude her contention is forfeited.

III

*Substantial Evidence Supports The Obstructing A Peace Officer Conviction*

Defendant contends there is insufficient evidence to sustain her conviction for obstructing a peace officer. She is wrong.

The jury convicted defendant of Penal Code section 148, subdivision (a), obstructing an officer. The elements are as follows: " '(1) the defendant willfully resisted, delayed, or obstructed a peace officer, (2) when the officer was engaged in the

9

performance of his or her duties, and (3) the defendant knew or reasonably should have known that the other person was a peace officer engaged in the performance of his or her duties. [Citations].' " (*In re Muhammed C.* (2002) 95 Cal.App.4th 1325, 1329.)

Defendant claims "[n]o evidence was presented as to how long [she] was in the closet or if she became aware that law enforcement officers were present." From this, she concludes "the record does not contain substantial evidence that [she] knew or reasonably should have known that peace officers were present."

Ferris told police officers that defendant was in bed with him when he heard the officers arrive, he saw the officers on the video monitor, and defendant left immediately after the officers' arrival. In addition, there was evidence that the officers identified themselves as officers when they knocked on the door, and that the SWAT vehicle could be seen on the monitor in defendant's and Ferris' bedroom. From these facts, a jury could reasonably conclude that defendant knew the police were executing a raid on the residence, and she accordingly attempted to hide from them in the closet.

DISPOSITION

The judgment is affirmed.


                                         ROBIE      , Acting P. J.



We concur:



      MAURO      , J.



      DUARTE      , J.



10