Filed 7/20/21  Beland v. Expedia CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| BRIAN D. BELAND et al., | |
| Plaintiffs and Appellants, | C086061 |
| v. | (Super. Ct. No. PC20160434) |
| EXPEDIA, INC., | |
| Defendant and Respondent. | |

Denae Beland used the website for Expedia, Inc. (Expedia) to book an airfare and hotel package to Cabo San Lucas, Mexico for her and her family.  She and her husband Brian[1] subsequently sued Expedia for, among other things, allegedly failing to warn them that a hurricane was forecasted to hit Cabo San Lucas hours after their flight to Mexico landed, causing them to suffer various injuries as a result of a city-wide, emergency shutdown.  The trial court granted Expedia's motion to stay the lawsuit pending an action

---

[1] For clarity, we will refer to Brian and Denae by their first names, and collectively as the Belands.

1

in the state of Washington pursuant to a forum selection clause in the terms of use for Expedia's website.

The Belands now contend the trial court erred in (1) overruling their evidentiary objections to a declaration Expedia submitted in support of its motion; (2) declining to admit declarations and a printout proffered by the Belands; (3) concluding that Expedia's website presented a "clickwrap" rather than a "browsewrap" agreement (concepts we explain in part III of this opinion); (4) concluding that Expedia's terms of use contained a forum selection clause rather than a venue selection clause; (5) determining that the terms of use were not unconscionable; (6) finding that the unilateral modification provision in the terms of use did not render the parties' contract illusory; (7) dismissing sua sponte their cause of action under the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.); and (8) striking their proposed settled statement.

We conclude (1) the trial court did not abuse its discretion in overruling the Belands' evidentiary objections to the declaration; (2) the trial court did not abuse its discretion in declining to admit the declarations and printout proffered by the Belands; (3) Expedia's final booking webpage was more like a browsewrap agreement and under the specific circumstances of this case the webpage gave Denae sufficient inquiry notice for us to conclude that she assented to the Expedia terms of use; (4) the terms of use contained a forum selection clause rather than a venue selection clause; (5) the trial court did not err in rejecting the Belands' unconscionability claim; (6) the terms of use were not illusory; (7) the trial court did not dismiss the CLRA cause of action; and (8) the Belands fail to demonstrate that the trial court erred in striking their proposed settled statement.

We will affirm the order of the trial court.

BACKGROUND

Expedia, a Washington corporation, maintained a website that allowed consumers to search for travel-related goods and services and make reservations with travel

2

suppliers. Denae used Expedia's website on her computer in El Dorado County, California on September 2, 2014, to book Virgin America Airline tickets from San Francisco, California to Cabo San Lucas, Mexico and accommodations at a Hyatt resort in Cabo San Lucas for her and her family. The Beland family arrived in Cabo San Lucas to find the city under a mandatory evacuation order because of a category 4 hurricane. They were forced to stay at a shelter for three days under terrible conditions until they were evacuated to Guadalajara, Mexico, where they had to pay for an overnight hotel stay and a flight home.

As residents of El Dorado County, the Belands sued Expedia in El Dorado County Superior Court for damages relating to their trip. Denae, a California licensed attorney, represented the Belands in the trial court and continues to do so on appeal. The Belands' second amended complaint alleged causes of action for negligence, failure to warn, breach of implied warranty of habitability, breach of contract, intentional and negligent infliction of emotional distress, and violation of the CLRA.

Pursuant to Code of Civil Procedure section 418.10[2] [motion to stay or dismiss due to inconvenient forum], Expedia moved to stay or dismiss the lawsuit and to require the Belands to file their action in Washington based on the forum selection clause in the terms of use on Expedia's website when Denae booked the Belands' trip. Expedia submitted the declaration of Pinglang Wang, its Director of Global Product Management, in support of the motion. Wang attached a screenshot of the relevant final booking webpage as an exhibit to his declaration. The webpage had the words "Review and book your trip" at the top, in bold and in a font larger than the text below it. A copy of the "Review and book your trip" webpage is appended to this opinion. Below a bullet point list, in the same-sized font as the words on the list, the page stated: "By selecting to

_____

[2] Undesignated statutory references are to the Code of Civil Procedure.

3

complete this booking I acknowledge that I have read and accept the above Rules & Restrictions, Terms of Use ✎ and Privacy Policy ✎.” The Belands agree the ✎ symbol signified a hyperlink was included. The words “Terms of Use” and “Privacy Policy” and the ✎symbol were in blue font.

Below the “By selecting to complete this booking” sentence, there was a green banner in which the following sentence appeared in bold and slightly larger font: “Book this flight and qualify for up to 54% off hotels for your trip.” The following words appeared below the green banner: “✓ Free cancellation within 24 hours!” The words “24 hours” were in blue font. The “Free cancellation” sentence was in the same-sized font as the bullet point list and the “By selecting to complete this booking” sentence.

Under the “Free cancellation” sentence, there was a bright orange box with the words “COMPLETE BOOKING” in larger-sized font. The following sentence appeared below the orange box: “🔒We use secure transmission and encrypted storage to protect your personal information.”

Wang attested that since at least September 2014 and continuing to December 2016, a consumer could not complete a booking using Expedia’s website without encountering the “Review and book your trip” webpage. He also attached a copy of the terms of use for Expedia’s website in effect on September 2, 2014, as an exhibit. The terms of use contained the forum selection clause.

After hearing oral argument, the trial court overruled the Belands’ evidentiary objections to Wang’s declaration. It concluded that this case involved an enforceable clickwrap agreement because a user had to take an affirmative step to agree to the terms of use by clicking the “COMPLETE BOOKING” button. It found that the terms of use contained a forum selection clause, not a venue selection clause, and the terms of use were not illusory.

The trial court determined the terms of use were procedurally unconscionable because they were offered on a take-it-or-leave-it basis by a party with superior

bargaining strength and the forum selection clause was not readily apparent in the terms of use. But the trial court concluded the terms of use were not substantively unconscionable because although the forum selection clause would cause inconvenience and additional expense for the Belands, it did not shock the conscience. The trial court granted Expedia's motion to stay the lawsuit pending an action in the state of Washington pursuant to the forum selection clause.

## DISCUSSION

### I

The Belands contend the trial court erred in overruling their evidentiary objections to the Wang declaration.

### A

The Belands objected to the Wang declaration on the following grounds: that Expedia did not offer a percipient witness to the terms of use; Expedia did not use recognized methods to authenticate the terms of use; the Wang declaration did not lay a foundation for the writings; and there was no evidence that the exhibits to the Wang declaration were the actual webpage and terms of use in effect on September 2, 2014. The trial court overruled the evidentiary objections.

Evidence in support of, or in opposition to, a section 418.10 motion must be admissible. (See generally *Paneno v. Centres for Academic Programmes Abroad Ltd.* (2004) 118 Cal.App.4th 1447, 1454.) "[T]he testimony of a witness concerning a particular matter is inadmissible unless he [or she] has personal knowledge of the matter." (Evid. Code, § 702, subd. (a).) "A witness' personal knowledge of a matter may be shown by any otherwise admissible evidence, including his [or her] own testimony." (Evid. Code, § 702, subd. (b).) In addition, a writing must be authenticated before it or secondary evidence of its contents may be admitted into evidence. (Evid. Code, § 1401.) A writing is authenticated when sufficient evidence has been produced to sustain a finding that the document is what its proponent purports it to be. (Evid. Code, § 1400).

5

The Belands argue de novo review applies here.  Although we would independently review whether a trial court properly interpreted a statute (*Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1476; *People v. Walker* (2006) 139 Cal.App.4th 782, 794-795), the Belands do not explain how the trial court incorrectly construed the Evidence Code.  Here, we review the trial court's evidentiary rulings for abuse of discretion.  (*Ramos v. Westlake Services LLC* (2015) 242 Cal.App.4th 674, 684; 31 Cal.Jur.3d (2021) Evidence, §§ 462, 469.)

B

Wang attested that he had worked for Expedia for about 12 years, including in 2014, when the Belands alleged Denae used the Expedia website to book their trip. Wang explained that as Expedia's Director of Global Product Management, he was responsible for managing Expedia's checkout process and implementing its payment methods, and he had personal knowledge of the matters set forth in his declaration.  He averred that the screenshot of the "Review and book your trip" webpage and the terms of use attached to his declaration were true and correct copies of the webpage and terms of use in effect on September 2, 2014.

Based on its content, the "Review and book your trip" webpage was part of the checkout process, which Wang said he managed for Expedia.  It was reasonable for the trial court to conclude, based on Wang's description of his responsibilities at Expedia, that Wang had personal knowledge of the checkout process on Expedia's website and could authenticate the "Review and book your trip" webpage and terms of use in effect on September 2, 2014.  (See *Davis v. USA Nutra Labs* (D.N.M. 2018) 303 F.Supp.3d 1183, 1190 (*Davis*); *Cordas v. Uber Techs., Inc.* (N.D. Cal. 2017) 228 F.Supp.3d 985, 987-988.)  " 'The author's testimony is not required to authenticate a document [citation]; instead, its authenticity may be established by the contents of the writing [citation] or by other means [citation].' " (*Daniel v. Wayans* (2017) 8 Cal.App.5th 367, 394.)  Wang's declaration was sufficient to authenticate the exhibits attached to the declaration.

6

The Belands claim the "Review and book your trip" webpage Expedia submitted was not a true and correct copy of the webpage Denae saw when she booked the Belands' trip. They argue the webpage Expedia submitted was a cropped version of the actual webpage. We do not consider those assertions because the Belands did not support them with citation to the record. (*City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239-1240 (*City of Lincoln*) [reviewing court may disregard contentions unsupported by citation to the record]; *Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 743 (*Miller*) [assertion that is unsupported by record reference is forfeited].)

The Belands have failed to establish that the trial court abused its discretion in denying their objections to the Wang declaration.

II

The Belands next challenge the trial court's refusal to admit the following documents: declarations they filed after briefing was complete and after the trial court had issued its tentative ruling, and a printout that Denae offered at the hearing on Expedia's motion.

A

About a month after the trial court issued its tentative ruling on Expedia's motion to stay or dismiss, the Belands filed declarations of Brian and Denae in opposition to the motion. Approximately five weeks later, at the hearing on Expedia's motion, Denae also asked the trial court to consider a printout of a webpage she said she obtained when she visited Expedia's website on September 14, 2017. The trial court declined to consider the declarations and printout because they were not submitted with the Belands' opposition papers and the printout was presented for the first time at the hearing.

Regarding the printout, the Belands now claim that prior to the hearing, Denae did not think to visit Expedia's website to prove what the "Review and book your trip" webpage actually looked like on September 2, 2014, because she thought the trial court would sustain her evidentiary objections. The Belands assert that after the trial court

7

posted its tentative ruling overruling their evidentiary objections, Denae understood that she needed to offer evidence that the screenshot attached to Wang's declaration was inaccurate. The Belands contend Denae's omission was excusable neglect and the trial court abused its discretion in refusing to accept the printout offered at the hearing.

As for the declarations, the Belands claim they filed the declarations after the trial court issued its tentative ruling because the tentative ruling brought to their attention that statements made within their opposition memorandum were not admissible evidence. The Belands explain that this action was the first lawsuit Denae had ever filed and she mistakenly believed statements in a memorandum of points and authorities constituted evidence. The Belands assert that the late filing of the declarations was due to excusable neglect.

B

All papers opposing a motion must be filed with the trial court and a copy served on each party at least nine court days before the hearing, unless the trial court permits a shorter time. (§ 1005, subd. (b); Cal. Rules of Court, rule 3.1300(b).) The declarations and printout were not filed within the time required for filing opposing papers. The trial court had discretion not to consider the late-filed papers. (Cal. Rules of Court, rule 3.1300(d); Super. Ct. El Dorado County, Local Rules, rule 7.10.02(D) (July 1, 2017 edition).)

A trial court may, upon any terms as may be just, relieve a party from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. (§ 473, subd. (b).) Application for such relief shall be made within a reasonable time, in no case exceeding six months after the judgment, dismissal, order, or proceeding was taken. (§ 473, subd. (b).) The party seeking relief bears the burden of establishing a right to relief. (*Hopkins & Carley v. Gens* (2011) 200 Cal.App.4th 1401, 1410.) The Belands did not file a motion for relief

8

under section 473. On appeal, however, they nevertheless argue that the "late evidence was due to excusable neglect."

We conclude that the Belands fail to show that Denae's omissions constituted excusable neglect. As for the declarations, a party opposing a motion must present admissible evidence, such as declarations, to establish contradictory facts. (Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2019) ¶¶ 9:103-9:103.2.) Statements contained in a brief are not evidence. (*In re Zeth S.* (2003) 31 Cal.4th 396, 413, fn. 11; *Brehm Communities v. Superior Court* (2001) 88 Cal.App.4th 730, 735.) The Belands do not establish that Denae's mistake about, or ignorance of, the law would justify relief for excusable neglect. (See *Anderson v. Sherman* (1981) 125 Cal.App.3d 228, 238 [ignorance of the law coupled with negligence in ascertaining it justifies denial of section 473 relief].)

With regard to the printout, Expedia's moving papers relied on the Wang declaration and exhibits to argue there was assent and adequate notice to bind the Belands to the terms of use. The Belands opposed the motion by analyzing the design and language used in the "Review and book your trip" webpage attached to the Wang declaration and arguing the webpage presented an unenforceable browsewrap agreement. The Belands claimed they did not assent to Expedia's terms of use and did not receive adequate notice of the forum selection clause in the terms of use. Under those circumstances, the Belands' assertion of a belated understanding by Denae about the significance of the exhibits to the Wang declaration would not justify relief under section 473. (See *Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1112 [trial court did not abuse its discretion in denying relief under section 473 based on the attorney's excusable neglect where the attorney failed to introduce readily available evidence which supported its client's position because it was not a mistake that a reasonably prudent person in the same circumstances might have made but rather conduct falling below the professional standard of care];

9

*Wiz Technology, Inc. v. Coopers & Lybrand* (2003) 106 Cal.App.4th 1, 17 (*Wiz Technology*) ["Section 473 cannot be used to remedy attorney mistakes, such as the failure to provide sufficient evidence in opposition to a summary judgment motion. . . . Counsel's failure to understand the type of response required or to anticipate which arguments would be found persuasive does not warrant relief under section 473."].)

In addition, the Belands did not act promptly to submit the declarations and printout. (*Rancho Mirage Country Club Homeowners Assn. v. Hazelbaker* (2016) 2 Cal.App.5th 252, 262; *Wiz Technology, supra,* 106 Cal.App.4th at p. 17.) They filed their declarations about one month after the trial court posted its tentative ruling without providing the trial court with an explanation for their delay in filing them. And although Expedia filed the Wang declaration more than four months before the trial court heard Expedia's motion, the Belands did not seek to offer the printout until the hearing. Further, the Belands failed to seek leave to submit the printout as new evidence during the approximately five-week interim between the issuance of the trial court's tentative ruling and the hearing. The record does not disclose any good cause for the delay in offering the printout.

Evidence received at a law and motion hearing must be by declaration or request for judicial notice without testimony or cross-examination, unless the court orders otherwise for good cause shown. (Cal. Rules of Court, rule 3.1306(a); *Reifler v. Superior Court* (1974) 39 Cal.App.3d 479, 483-485.) The Belands did not seek permission to introduce oral evidence at the hearing pursuant to rule 3.1306(b). In any event, the Belands fail to show how the printout was relevant, given that it was obtained years after the Belands booked their trip and there is no evidence the webpage had not changed during that time.

The Belands have not established abuse of discretion regarding their declarations or the printout.

10

III

The Belands further claim the trial court erred in concluding that Expedia's "Review and book your trip" webpage was a clickwrap agreement rather than a browsewrap agreement. We conclude Expedia's final booking webpage was more like a browsewrap agreement.

Courts have described internet-based contracts as falling within general types, including clickwrap and browsewrap agreements. (*Berkson v. Gogo LLC* (E.D.N.Y. 2015) 97 F.Supp.3d 359, 394-395 (*Berkson*).) A clickwrap agreement requires a user to click a box on the webpage indicating acceptance of the terms of use (which have been presented to the user) before the user is allowed to proceed. (*Long v. Provide Commerce, Inc.* (2016) 245 Cal.App.4th 855, 862; *Berkson,* at p. 397; see, e.g. *Davis, supra,* 303 F.Supp.3d at p. 1190.) A browsewrap agreement does not require a user to manifest assent to the terms of use by clicking a box; instead, simply by using the website, the user is deemed to have accepted the terms of use, which are posted somewhere on the website via a hyperlink. (*Long,* at p. 862; *Berkson,* at p. 395.) " ' "[I]n a pure-form browsewrap agreement, 'the website will contain a notice that -- by merely using the services of, obtaining information from, or initiating applications within the website -- the user is agreeing to and is bound by the site's terms of service.' " ' " (*Long,* at p. 862.) A user can continue to use the website without clicking the hyperlink for the terms of use. (*Ibid.*)

Here, the "Review and book your trip" webpage was more like a browsewrap agreement. The user was not required to click a button expressly saying something like "I have read and accept the terms of use" before proceeding to finalize the transaction. In addition, the terms of use were not displayed on the "Review and book your trip" webpage; a user had to click a hyperlink to view the terms of use.

11

We do not consider the Belands' assertions, made without citations to the record, about a different version of the "Review and book your trip" webpage.  (*City of Lincoln, supra,* 102 Cal.App.4th at pp. 1239-1240; *Miller, supra,* 101 Cal.App.4th at p. 743.)

That a user had to click a hyperlink to view the terms of use does not necessarily defeat a finding of assent.  (*Feld v. Postmates, Inc.* (S.D.N.Y. 2020) 442 F.Supp.3d 825, 831(*Feld*) [stating in a case applying California law that clicking a hyperlink is the 21st century equivalent of turning over a document to read the fine print]; *Meyer v. Uber Techs., Inc.* (2d Cir. 2017) 868 F.3d 66, 78-79 [applying California law].)  And whether Denae actually clicked on the hyperlink for terms of use and read the terms is immaterial.  (*Feld,* at p. 831; see generally *Marin Storage & Trucking, Inc. v. Benco Contracting & Engineering, Inc.* (2001) 89 Cal.App.4th 1042, 1049 (*Marin Storage*) [failing to read a contract before signing is not a ground for avoiding the contract].)  What matters is whether the "By selecting to complete this booking" sentence on the "Review and book your travel" webpage would put a reasonably prudent consumer on notice that his or her booking would be subject to Expedia's terms of use.  (*Feld,* at p. 831.)

Expedia certainly could have done more to make it clear to consumers that by clicking the "Complete Booking" button, Expedia would deem them to have accepted the terms of use.  For example, Expedia could have highlighted the "By selecting to complete this booking" sentence and placed it right next to the "Complete Booking" button, rather than placing other highlighted items in between them.  But in this particular case, the consumer -- Denae -- is an attorney trained in the importance of reading and understanding contract language.  And courts have enforced terms of use against online consumers in cases involving websites or mobile applications similar to Expedia's "Review and book your travel" webpage.  (*Feld, supra*, 442 F.Supp.3d at p. 829-831; *In re Facebook Biometric Info. Privacy Litigation* (N.D.Cal. 2016) 185 F.Supp.3d 1155, 1163, 1166; *Fteja v. Facebook, Inc.* (S.D.N.Y. 2012) 841 F.Supp.2d 829, 833, 835, 840-841; *Swift v. Zynga Game Network, Inc.* (N.D. Cal. 2011) 805 F.Supp.2d 904, 911; but

12

see *Berkson, supra*, 97 F.Supp.3d at pp. 373-374, 404.)  Based on these specific circumstances, the "Review and book your travel" webpage gave Denae sufficient inquiry notice for us to conclude that Denae assented to the Expedia terms of use.

But that is not the end of our inquiry.  The terms of use are still subject to challenge if they are not fair and reasonable.  We address whether the terms of use are fair and reasonable in subsequent portions of this opinion.

IV

The Belands argue that the terms of use contained a venue selection clause rather than a forum selection clause and that venue selection clauses are void as a matter of law.

A forum selection clause chooses a court from among different states or nations. (*Alexander v. Superior Court* (2003) 114 Cal.App.4th 723, 727.)  In contrast, a "venue selection clause is purely an intrastate issue involving the selection of a county [within a state] in which to hold the trial." (*Ibid.*, fn. omitted.)

The provision at issue here provides in pertinent part:  "You hereby consent to the exclusive jurisdiction and venue of courts in King County, Washington, USA, in all disputes arising out of or relation to the use of this Website."  The provision is a mandatory forum selection clause.  (*Olinick v. BMG Entertainment* (2006) 138 Cal.App.4th 1286, 1294 (*Olinick*).)  It requires disputes arising out of the use of Expedia's website to be litigated in a specific county in the state of Washington.

The procedure for enforcing a forum selection clause is a special type of motion to stay or dismiss for forum non conveniens pursuant to section 410.30 or 418.10. (§§ 410.30, subd. (a), 418.10, subd. (a)(2); *Bushansky v. Soon-Shiong* (2018) 23 Cal.App.5th 1000, 1005; *Olinick, supra,* 138 Cal.App.4th at p. 1294; *Berg v. MTC Electronic Technologies Co.* (1998) 61 Cal.App.4th 349, 358 (*Berg*).)  In circumstances like this one involving a mandatory forum selection clause, the factors relevant to a traditional forum non conveniens analysis do not control.  (*Intershop Communications AG v. Superior Court* (2002) 104 Cal.App.4th 191, 198 (*Intershop*); *Cal-State Business*

13

*Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1682-1683 (*Cal-State*).) The mandatory forum selection clause is presumed valid and will be enforced unless the party resisting enforcement of the clause shows that enforcement would be unreasonable or unfair under the circumstances of the case. (*Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 147 (*Verdugo*); *Trident Labs, Inc. v. Merrill Lynch Commercial Finance Corp.* (2011) 200 Cal.App.4th 147, 154.) This favored treatment is attributed to the freedom to contract and the important role forum selection clauses play in facilitating national and international commerce. (*Net2Phone, Inc. v. Superior Court* (2003) 109 Cal.App.4th 583, 587-588 (*Net2Phone*); *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 11-12 (*America Online*).) Although a mandatory forum selection clause cannot completely eliminate a trial court's discretion to make appropriate rulings regarding choice of forum, the modern trend is to enforce mandatory forum selection clauses unless they are unfair or unreasonable. (*Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 495 (*Smith*); *Olinick, supra,* 138 Cal.App.4th at p. 1294; *Berg, supra*, 61 Cal.App.4th at p. 358.)

To resist enforcement of an otherwise applicable forum selection clause, a party may show that the chosen forum would be unavailable or unable to accomplish substantial justice or that no rational basis exists for the choice of forum, such as if the chosen forum has no logical connection with any party or the transaction. (*Verdugo, supra,* 237 Cal.App.4th at p. 147; *Intershop, supra*, 104 Cal.App.4th at p. 199; *America Online, supra,* 90 Cal.App.4th at p. 12 & fn. 5; *Cal-State, supra,* 12 Cal.App.4th at pp. 1679, 1681-1682.) In addition, California courts "will refuse to defer to the selected forum if to do so would substantially diminish the rights of California residents in a way that violates our state's public policy." (*America Online, supra,* 90 Cal.App.4th at p. 12; see *Vita Planning & Landscape Architecture, Inc. v. HKS Architects, Inc.* (2015) 240 Cal.App.4th 763, 774-777; *Intershop, supra,* 104 Cal.App.4th at p. 200.)

14

The Belands appear to argue that enforcement of the forum selection clause in Expedia's terms of use was unreasonable or unfair under the circumstances of this case because the clause was unconscionable and the terms of use were illusory. We turn to those claims in parts V and VI of this opinion.

V

The Belands contend the trial court erred in concluding that Expedia's terms of use were not unconscionable.

We review a trial court's resolution of disputed facts for substantial evidence and determine de novo whether the facts so found constitute unconscionability. (*Ajamian v. CantorCO2e, L.P.* (2012) 203 Cal.App.4th 771, 795 (*Ajamian*); *Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 89; *Marin Storage, supra,* 89 Cal.App.4th at p. 1055.)

A court may refuse to enforce a contract if it finds as a matter of law that the contract or a clause within the contract was unconscionable at the time it was made. (Civ. Code, § 1670.5, subd. (a).) Unconscionability consists of procedural and substantive elements. (*Sanchez v. Valencia Holding Co., LLC* (2015) 61 Cal.4th 899, 910 (*Sanchez*).) " ' "The prevailing view is that [procedural and substantive unconscionability] must both be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability." [Citation.] But they need not be present in the same degree. "Essentially a sliding scale is invoked . . . ." [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.] Courts may find a contract as a whole 'or any clause of the contract' to be unconscionable." (*Ibid*., italics omitted.)

Unconscionability is a fact-specific inquiry, requiring examination of the totality of a contract's terms as well as the circumstances of its formation. (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1146.) "The ultimate issue in every case is

15

whether the terms of the contract are sufficiently unfair, in view of all relevant circumstances, that a court should withhold enforcement." (*Sanchez, supra*, 61 Cal.4th at p. 912.) The party asserting unconscionability bears the burden of proving procedural and substantive unconscionability. (*Id*. at p. 911; *Crippen v. Central Valley RV Outlet* (2004) 124 Cal.App.4th 1159, 1165 (*Crippen*).)

A

Although the trial court found the Expedia terms of use to be procedurally unconscionable, the Belands nevertheless argue the trial court erred in concluding, on a sliding scale, that it was a low degree of procedural unconscionability.

Procedural unconscionability looks at the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power. (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246 (*Pinnacle Museum*).) " ' "Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise [occurs] where the allegedly unconscionable provision is hidden within a prolix printed form." ' " (*Id.* at p. 247.)

Although this case does not involve the type of economic pressure present in employment situations, the trial court correctly determined there were elements of procedural unconscionability present. With regard to oppression, Expedia's terms of use were presented on a take-it-or-leave-it basis. The terms of use provided that use of Expedia's website required acceptance of all the Expedia terms and conditions without modification. On the other hand, there is no evidence the Belands had to use Expedia's website to make travel arrangements or that they could not have looked elsewhere to purchase airplane tickets and make hotel reservations that would have permitted them to litigate a dispute in California. " ' "[T]he 'oppression' factor . . . may be defeated, if the complaining party has a meaningful choice of reasonably available alternative sources of supply from which to obtain the desired goods and services free of the terms claimed to be unconscionable." ' " (*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1572

16

(*Parada*); see *Crippen, supra*, 124 Cal.App.4th at p. 1165; *Marin Storage, supra*, 89 Cal.App.4th at pp. 1054, 1056.)

With regard to surprise, there was no evidence that Denae was not given an opportunity to read the entire terms of use before booking. (*Parada, supra*, 176 Cal.App.4th at p. 1571 [in assessing procedural unconscionability, the appellate court considered whether the plaintiffs were given ample time to read the defendant's form agreement before signing].) And forum selection clauses are not uncommon in internet-based contracts. (See *America Online, supra*, 90 Cal.App.4th at p. 12.) Nevertheless, the "Review and book your trip" webpage did not present the terms of use to Denae on the same page or require her to click on a button expressly stating that she had read and accepted the terms of use. The structure of the terms of use also did not call attention to the forum selection clause. The clause was on page 10 of an 11-page document. The terms of use did not contain a table of contents. The forum selection clause was in the third paragraph of a section titled "General." It was placed in a section addressing a wide variety of topics and in a paragraph discussing at least three different issues, instead of in a separate section and under a separate heading. (Cf. *Pinnacle Museum, supra*, 55 Cal.4th at p. 247, fn. 12 [affirming finding of no surprise where arbitration provisions appeared in section titled "Resolution of Construction Disputes by Arbitration" within an article titled "Construction Disputes" and the section had subsections].) We do not consider the Belands' claims that the terms of use hyperlink was hidden and that Denae was rushed to complete the booking because they are not supported by a citation to the record. (*City of Lincoln, supra,* 102 Cal.App.4th at pp. 1239-1240; *Miller, supra,* 101 Cal.App.4th at p. 743.)

The above circumstances created significant procedural unconscionability. (*Sanchez, supra*, 61 Cal.4th at p. 915; *Parada, supra*, 176 Cal.App.4th at p. 1573.) We turn next to whether the terms of the contract are also substantively unconscionable. (*Sanchez,* at p. 915; *Parada,* at p. 1570 [both procedural and substantive

unconscionability must be present for a court to refuse to enforce a contract due to unconscionability].)

B

The Belands claim the forum selection clause was substantively unconscionable because it imposed an unreasonable burden on them, provided no notice as to the state and county in which they would be forced to litigate, and provided no mutual right to sue in their own state.

Substantive unconscionability focuses on the actual terms of the contract and assesses whether those terms are overly harsh or one-sided, "that is, whether contractual provisions reallocate risks in an objectively unreasonable or unexpected manner." (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 703 (*Serpa*); see *Pinnacle Museum, supra,* 55 Cal.4th at p. 246.) A contract term is not substantively unconscionable merely because it gives one side a greater benefit; it must be so one-sided as to "shock the conscience." (*Serpa,* at p. 703; accord *Sanchez, supra*, 61 Cal.4th at p. 911 [not all one-sided contract provisions are unconscionable].) " 'The unconscionability doctrine ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as " ' "overly harsh" ' " [citation] " 'unduly oppressive' " [citation], " 'so one-sided as to "shock the conscience" ' " [citation], or "unfairly one-sided" [citation]. All of these formulations point to the central idea that unconscionability doctrine is concerned not with "a simple old-fashioned bad bargain" [citation] but with terms that are "unreasonably favorable to the more powerful party" [citation].' " (*Sanchez, supra*, 61 Cal.4th at pp. 910-911.)

We conclude the forum selection clause was not so unduly oppressive or one-sided as to shock the conscience. The forum selection clause created a bilateral obligation, requiring both Expedia and the consumer to bring any action relating to the use of the website in Washington. (Cf. *Armendariz v. Foundation Health Psychcare Services, Inc.*

18

(2000) 24 Cal.4th 83, 115-121; *Ajamian, supra*, 203 Cal.App.4th at pp. 798, 802; *Fitz v. NCR Corp.* (2004) 118 Cal.App.4th 702, 713, 725.)

Additionally, designating Washington as the forum for resolving disputes involving Expedia's website was not unreasonable because Washington was Expedia's place of incorporation and principal place of business. (*Verdugo, supra*, 237 Cal.App.4th at p. 147 [a forum selection clause is reasonable if it has a logical connection with at least one of the parties or their transaction].) It was reasonable that Expedia would want lawsuits involving its website to be conducted where its principal place of business was located, where its users and the travel-related goods and services it offered can be from or involve a multitude of states and countries. (See *Carnival Cruise Lines, Inc. v. Shute* (1991) 499 U.S. 585, 595 [113 L.Ed.2d 622]; *CQL Original Products, Inc. v. National Hockey League Players' Assn.* (1995) 39 Cal.App.4th 1347, 1355; *Lu v. Dryclean-U.S.A. of California, Inc.* (1992) 11 Cal.App.4th 1490, 1493, fn. 2 (*Lu*); *Polimaster Ltd. v. RAE Sys.* (9th Cir. 2010) 623 F.3d 832, 837.)

As for the Belands' claim that enforcing the forum selection would unreasonably burden them, the Belands did not timely present evidence that requiring them to prosecute their claims in Washington would impose an undue burden. In any event, the California Supreme Court has held that " '[m]ere inconvenience or additional expense is not the test of unreasonableness [for a mandatory forum selection clause].' " (*Smith, supra*, 17 Cal.3d at p. 496; accord *Net2Phone, supra*, 109 Cal.App.4th at p. 588 [noting that California courts routinely enforce forum selection clauses even where the chosen forum is far from the plaintiff's residence]; *America Online, supra*, 90 Cal.App.4th at p. 19 ["the additional cost or inconvenience necessitated by litigation in the selected forum is not part of the calculus when considering whether a forum selection clause should be enforced"]; *Lu, supra*, 11 Cal.App.4th at p. 1493 [rejecting argument that litigating in chosen forum of Florida would be inconvenient for the California resident plaintiffs].)

19

The Belands further assert they never expected other contract terms, such as a complete liability disclaimer. To the extent they now contend those terms are substantively unconscionable, we do not consider the claims because they were not raised in the trial court and are made in a perfunctory manner. (*People* v. *Freeman* (1994) 8 Cal.4th 450, 482, fn. 2; *Dimmick v. Dimmick* (1962) 58 Cal.2d 417, 422; *Damiani v. Albert* (1957) 48 Cal.2d 15, 18.)

*Bolter v. Superior Court* (2001) 87 Cal.App.4th 900, a case upon which the Belands rely heavily, is distinguishable. Unlike *Bolter*, which involved franchisees with established relationships with a franchisor, there is no evidence the Belands had to book a vacation package using Expedia. (*Bolter,* at p. 907.) Also unlike *Bolter*, there is no evidence Expedia moved its headquarters from California to Washington after Denae used its website or that the terms of use in effect at the time Denae used the website did not contain a forum selection clause requiring Expedia users to litigate disputes in Washington.

Because both procedural and substantive unconscionability must be present for a court to exercise its discretion to refuse to enforce a contract provision under the doctrine of unconscionability (*Sanchez, supra,* 61 Cal.4th at p. 910) and the Belands have not demonstrated that the forum selection clause was substantively unconscionable, we conclude the trial court did not err in rejecting the Belands' unconscionability claim.

VI

The Belands also argue that the terms of use were illusory because they contained a unilateral modification provision.

The terms of use provided in pertinent part, "This Website is offered to you conditioned upon your acceptance without modification of all the terms, conditions, and notices set forth below (collectively, the "Terms of Use" or "Agreement"). Please read the Terms of Use carefully. By accessing or using this Website, booking any reservations for travel products or services on this Website, or contacting our call center agents, you

20

agree that the Terms of Use then in force shall apply. If you do not agree to the Terms of Use, please do not use or book any reservations through this Website or our call center agents. Expedia may at any time change these Terms of Use and your continued use of this Website is conditioned upon acceptance of the updated Terms of Use."

To the extent the Belands contend that the above-quoted provision permitted Expedia to retroactively change the terms of use applicable to her transaction, we disagree. In interpreting a contract, we " '[give] effect to the mutual intention of the parties as it existed' at the time the contract was executed. [Citation.] Ordinarily, the objective intent of the contracting parties is a legal question determined solely by reference to the contract's terms. [Citation.]" (*Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1126.) In general, we interpret the words of a contract in their ordinary sense. (Civ. Code, § 1644.) We also interpret a contract in a manner that will "make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." (Civ. Code, § 1643.)

Applying those principles, we conclude the provision sought to impose the terms of use in effect at the time a consumer used Expedia's website or contacted Expedia's call center. The terms of use did not say any updated terms of use applied retroactively to completed transactions or accrued claims.

In addition, the implied covenant of good faith and fair dealing, which the law implies in every contract (*Egan v. Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818), limited Expedia's authority to modify the terms of use. (*Serpa, supra*, 215 Cal.App.4th at pp. 706-708.) A contract provision permitting a party to unilaterally modify contract terms does not permit that party to change the terms in such a manner as to frustrate the purpose of the contract. (*Id.* at p. 706; accord *Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373, 390; *Serafin v. Balco Properties Ltd., LLC* (2015) 235 Cal.App.4th 165, 176 ["Because California law prevents a party from exercising a discretionary

21

power, such as the power to modify, in bad faith or in a way that deprives the other party of the benefits of the agreement, [the defendant's] right to modify its 'policies or practices at any time' does not render the arbitration agreement illusory."]; *Peng v. First Republic Bank* (2013) 219 Cal.App.4th 1462, 1473-1474.) The non-California cases the Belands cite are not in accord with our state court decisions and we do not follow them. We reject the Belands' contention that the terms of use were unenforceable because they were illusory.

VII

The Belands further claim the trial court erred in dismissing their CLRA cause of action sua sponte.

The second amended complaint alleged that Expedia violated the CLRA by inserting various unconscionable terms, including the forum selection clause. In opposing Expedia's motion, the Belands claimed they suffered damages caused by Expedia's attempt to enforce the forum selection clause, and those damages gave them standing to bring a CLRA claim. The Belands' claim of standing was not based on damages caused by any other alleged unconscionable provision in the terms of use. Because the trial court determined that the forum selection clause was not unconscionable, it concluded the CLRA cause of action did not require the trial court to deny enforcement of the forum selection clause. The trial court did not dismiss the CLRA cause of action.

The Belands assert in their appellate reply brief that a CLRA cause of action makes a forum selection clause unenforceable, citing *America Online, supra,* 90 Cal.App.4th 1. That is not the holding of *America Online.* (*Id.* at pp. 4-5, 14-18.) And the Belands do not contend nor explain how enforcement of the forum selection clause would require them to waive their rights under the CLRA.

22

## VIII

The Belands also argue that the trial court erred in rejecting their proposed settled statement and adopting Expedia's counter statement.

### A

The Belands elected to proceed on appeal with a settled statement under California Rules of Court, rule 8.137 because there was no court reporter present at the relevant hearing. They filed a proposed settled statement in the trial court. To provide a summary of what was said at the hearing, the Belands submitted a 15-page outline that Denae had used for oral argument, to which Denae added notes about comments by the trial judge and opposing counsel. The outline also included Denae's opinions about some of the judge's comments. For example, in the section titled "Unenforceable Browsewrap v. clickwrap - Assent to Terms if [*sic*] Use" she wrote, "The court could not seem to understand what I was talking about with the grey scroll bar."

Expedia objected to the Belands' proposed settled statement on the ground that it was not a full, fair and objective summary of the hearing and was merely an outline of Denae's oral argument and her opinion about the trial court's tentative ruling. Expedia said the Belands' proposed settled statement was too argumentative. Accordingly, Expedia offered its own proposed statement.

The trial court sustained Expedia's objections, struck the Belands' proposed settled statement and adopted Expedia's proposed statement.

### B

A settled statement is a summary of the trial court proceedings, approved by the trial court. (Cal. Rules of Court, rule 8.137(a).) An appellant may elect to use a settled statement as the record of the oral proceedings in the trial court when designated oral proceedings in the trial court were not reported by a court reporter. (Cal. Rules of Court, rule 8.137(a), (b)(1).)

23

An appellant's proposed settled statement must contain a condensed narrative of the oral proceedings specified in the notice designating the record on appeal. (Cal. Rules of Court, rule 8.137(d)(2).) The narrative must include a concise factual summary of the evidence and the testimony of each witness relevant to the points being raised on appeal. (Cal. Rules of Court, rule 8.137(d)(2).) In settling the statement of the oral proceedings, a trial court may rely on the trial judge's own memory, the notes made by the judge during the trial and the suggestions of the respondents. (*Western States Constr. Co. v. Municipal Court of San Francisco* (1951) 38 Cal.2d 146, 150.) We review the trial court's decision regarding a proposed settled statement for abuse of discretion. (*Randall v. Mousseau* (2016) 2 Cal.App.5th 929, 935 (*Randall*); *Sidebotham v. Superior Court* (1958) 161 Cal.App.2d 624, 628 (*Sidebotham*).)

The Belands contend the trial court abused its discretion in striking their proposed settled statement because a trial court may not eliminate an appellant's specification of the grounds of appeal from the proposed statement. But a trial court does not abuse its discretion in striking a proposed settled statement that is "too incomplete, inaccurate and distorted to serve as a basis for amendment and correction, short of preparing an entirely new statement." (*Sidebotham, supra*, 161 Cal.App.2d at pp. 626-627; see also *Randall, supra*, 2 Cal.App.5th at p. 934.) Here, the trial court found the Belands' proposed summary of the hearing was not an accurate or fair reflection of the oral proceedings, and that Expedia's proposed settled statement was an accurate summary of those proceedings. The judge who settled the statement of oral proceedings was the same judge who presided over the hearing on Expedia's stay or dismissal motion and was in a position to assess the accuracy of the proposed statements.

On appeal, the Belands disagree that their proposed settled statement was inaccurate. As appellants, they bear the burden of providing an adequate record demonstrating error. (*Randall, supra*, 2 Cal.App.5th at pp. 932, 935.) Based on the record on appeal, it appears the trial court did not abuse its discretion. The trial judge

was in the best position to assess the accuracy and adequacy of the Belands' proposed statement. (*Sidebotham, supra*, 161 Cal.App.2d at p. 628.) Further, the Belands fail to demonstrate that the trial court's ruling prejudiced them. (§ 475.)

Citing Government Code section 68086 and California Rules of Court, rule 2.956(b)(3), the Belands also argue the trial court failed to comply with mandatory rules regarding access to a court reporter. The Belands again fail to demonstrate any error. "Each trial court must adopt and post in the clerk's office a local policy enumerating the departments in which the services of official court reporters are normally available, and the departments in which the services of official court reporters are not normally available during regular court hours. If the services of official court reporters are normally available in a department only for certain types of matters, those matters must be identified in the policy." (Cal. Rules of Court, rule 2.956(b)(1).) A court may adopt the policy required in rule 2.956(b)(1) as a local rule. (Cal. Rules of Court, rule 2.956(b)(2)(B).) If the services of an official court reporter will not be available during a hearing on a law and motion matter, that fact must be noted on the court's official calendar. (Cal. Rules of Court, rule 2.956 (b)(4).) If the services of an official court reporter are not available for a hearing in a civil case, a party may arrange for the presence of a certified shorthand reporter to serve as an official pro tempore reporter. (Cal. Rules of Court, rule 2.956(c).)

Consistent with rule 2.956, the local rules for El Dorado County Superior Court provided that "[c]ourt reporters shall be available for all hearings in any calendared matter, except no court reporter is provided or an official record of proceedings made in traffic, small claims, and limited unlawful detainer proceedings. . . . In all matters in which the court does not provide a court reporter, one or more parties may elect to have a reporter present; however, the reporter shall be obtained by and at the expense of one or more parties. [¶] . . . [¶] In Superior Court, there shall be a court reporter fee as set in the court's Uniform Civil Fee Schedule. All parties shall provide, and post, court

25

reporter fees pursuant to Government Code section 68086. Fees for proceedings lasting less than one hour shall be posted by the moving party at the time of filing. Fees for proceedings lasting more than one hour, including trials, shall be posted as directed by the court or at the beginning of any long cause hearing or trial." (Super. Ct. El Dorado County, Local Rules, rule 2.00.07 (July 1, 2017 edition).)

The record shows there was a court reporter in other law and motion proceedings in this case, but there was no court reporter present when the trial court heard Expedia's stay or dismissal motion. The record does not indicate that the services of a court reporter were not available for the hearing on Expedia's motion. A court reporter is available in a civil case on the order of the court or at the request of a party. (§ 269.) The record on appeal does not show whether a party requested a court reporter for the hearing on Expedia's motion pursuant to section 269. Government Code section 68086 requires the payment of a fee for the cost of the court reporting services. The record does not show whether the required court reporting services fee was paid. We cannot discern on this record that there was trial court error.

### DISPOSITION

The trial court's order is affirmed. Respondent shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

/S/
MAURO, Acting P. J.

We concur:


/S/
MURRAY, J.


/S/
KRAUSE, J.

26

## Review and book your trip

1. Review your trip details to make sure the dates and times are correct

2. Check your spelling. Flight passenger names must match government-issued photo ID exactly.

   Traveler 1 **Mr. Mike Freeman** (Make changes)

3. Review the terms of your booking.

   - **Tickets are nonrefundable and nontransferable.** Name changes are not allowed
   - Please read the **complete penalty rules for changes and cancellations** applicable to this fare
   - Please read important information regarding **airline liability limitations**
   - Prices may not include baggage fees or other fees charged directly by the airline
   - Fares are not guaranteed until ticketed.
   - Federal law forbids the carriage of hazardous materials aboard aircraft in your luggage or on your person

By selecting to complete this booking I acknowledge that I have read and accept the above Rules & Restrictions, **Terms of Use** and **Privacy Policy**.

**Book this flight and qualify for up to 54% off hotels for your trip.**

✔ Free cancellation within 24 hours!

**COMPLETE BOOKING >**

🔒 We use secure transmission and encrypted storage to protect your personal information.