Filed 1/18/24; certified for publication 1/30/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| In re A.K., a Person Coming Under the Juvenile Court Law. | C097776 |
| CALAVERAS COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>T.K. et al.,<br><br>Defendants and Appellants. | (Super. Ct. No. 22JD6438) |

Appellant C.B., the biological father of the minor A.K., appeals from the January 2023 order of the juvenile court terminating his parental rights.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  He contends, among other things, that the juvenile court and the Calaveras County Health and Human Services Agency (the Agency) denied his due process rights to notice and an opportunity to participate in dependency proceedings to

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

try to establish presumed father status.  T.K., the minor's mother (mother), joins in C.B.'s arguments.  We agree.  The juvenile court and the Agency did not comply with duties (1) to try to identify all of the minor's alleged fathers (including C.B.) early in the dependency proceedings, (2) to give adequate notice to C.B. that his parental rights were at stake in the proceedings, or (3) to give C.B. notice of specific important hearings.  Accordingly, we reverse the order terminating parental rights.

BACKGROUND

I

*Initial Dependency Proceedings*

When the minor was born in April 2022, the Agency received a report that mother tested positive for methamphetamine, benzodiazepines, and sexually transmitted diseases.  Consistent with mother's disclosure to the Agency that she had used methamphetamine during her pregnancy, she tested positive for amphetamines in early December 2021 and mid-January 2022.

On April 20, 2022,[2] the Agency filed a juvenile dependency petition alleging the minor came within section 300, subdivision (b), due to prenatal exposure to methamphetamine, as well as mother's lack of prenatal care, history of substance abuse, and history of arrests for possession of a controlled substance.  The petition further alleged that the minor was at risk of abuse under section 300, subdivision (b), given the May 2019 removal of the minor's half siblings due to mother's substance abuse.  At the April 21 detention hearing at which mother appeared, the juvenile court detained the minor from the care of mother and minor's alleged father, D.C.  The reporter's transcript of the hearing reflects no inquiry by the juvenile court regarding the identity of any other alleged fathers.

---

[2] All referenced events occurred in 2022 unless stated otherwise.

2

II

*Jurisdiction and Disposition*

On May 3, the juvenile court held a "continued detention hearing" at which mother and D.C. appeared. The court stated it "ha[d] some questions [it] ha[d] to ask of" D.C., which were "not asked at the first hearing." After D.C. answered a few of the court's questions regarding the nature of his relationship with mother and whether D.C. signed any paperwork at the hospital when the minor was born, counsel for D.C. interjected: "Just to expedite this Your Honor . . . my client is actually requesting paternity testing . . . to establish whether or not he is the biological father." The court responded, "All right. Anything more that [D.C.] wants me to hear on parentage inquiry?" Counsel for D.C. replied, "No, Your Honor." The court asked, "Anything more [mother] wants me to hear on the parentage inquiry?" Mother replied, "No." Noting D.C.'s request indicated "some kind of doubt," the juvenile court granted D.C.'s request for paternity testing and stated, "at this point I will just designate [D.C.] as an alleged father." The reporter's transcript of the hearing reflects no inquiry by the juvenile court regarding the identity of any other alleged fathers.

At a jurisdiction hearing two weeks later, on May 17, mother and D.C. were present and the juvenile court asked the Agency if the results of D.C.'s paternity test were known. Counsel for the Agency explained the results were not back. Conceding mother was "bypassable,"[3] counsel for mother proposed the hearing be continued to a later date "for a combined juris[diction] disposition" hearing, which would

---

[3] See *In re Christopher L.* (2022) 12 Cal.5th 1063, 1078 [explaining that § 361.5, subd. (b) " 'contains several reunification "bypass provisions" permitting (or, in some cases, requiring) a court to deny a parent reunification services' when it finds by clear and convincing evidence that one or more of the bypass provisions apply"]; § 361.5, (b)(10)(A) [bypass when the court "ordered termination of reunification services for . . . half siblings of [the minor] because the parent . . . failed to reunify with the . . . half

3

(a) allow the parties to "know what we are looking at, what . . . the case plan would look like" and (b) "also give time to find out what [D.C.'s] status is." Counsel for D.C. agreed with that request, saying: "I agree that combined jurisdiction makes more sense especially if bypass is on the table because if my client is [the] biological father then potentially he will receive services and not [be] going to a [section 366.26 hearing[4]] or maybe not going to trial." The juvenile court granted the request, explaining, "there are enough moving parts where we don't know father's status, and we don't know if the recommendation is going to be to bypass." Again, the reporter's transcript of this hearing reflects no inquiry by the juvenile court regarding the identity of any other alleged fathers.

In a disposition report filed on June 16, a social worker reported that on May 31, the Agency learned that D.C. was not the minor's biological father, and that mother told the social worker that C.B. "may be the biological father of [the minor]." This is the first time that C.B. appears in the record. The June report listed C.B. as an alleged father, provided his street address and phone number and recommended bypassing mother for reunification services and holding a section 366.26 hearing in October. The record indicates the June 16 disposition report was not sent to C.B.

On June 17, a social worker sent a letter and Judicial Council form JV-505 to C.B. by first-class mail. Relevant here, the substance of the letter stated: "I am a social

_____

sibling[s]," and "has not subsequently made a reasonable effort to treat the problems that led to" that removal].

[4] "The repercussions of terminating services and ordering a hearing to devise a permanent plan ([ ] § 366.26) reverberate through the cases. 'For all practical purposes, the tie between parent and child is severed by the referral to the section 366.26 hearing, because the court has terminated efforts to reunify the family, and now has only the circumscribed options of adoption, guardianship or long-term foster care for the child, none of which directly involves the parent. . . . Absent a change of circumstance, the juvenile court will no longer consider the reunification efforts of the parent.' " (*In re Elizabeth R*. (1995) 35 Cal.App.4th 1774, 1788.)

4

worker with [the Agency].  This letter is to inform you that the agency has been informed that you may be the biological father of [the minor], whom is a dependent of our court. Please contact me at the numbers provided below."

"Judicial Council form JV-505 is entitled 'Statement Regarding Paternity.'  The form has check boxes next to preprinted statements through which an alleged father can indicate his position with regard to paternity and representation by counsel.  Concerning paternity, the form provides the alleged father with the following options:  He can deny he is the father of the subject child; he can indicate he does not know if he is the father and can either consent to or request paternity testing; he can indicate he believes he is the child's father and request that the court enter a judgment of paternity; or, he can indicate that he has already established paternity by either a voluntary declaration or a judgment of paternity."  (*In re Paul H.* (2003) 111 Cal.App.4th 753, 761, fn. omitted (*Paul H.*).)[5]

Four pages in length, the Judicial Council form JV-505 that the social worker sent to C.B. provided the minor's first and last name, the case number of the matter, and the location of the Calaveras County Superior Court.  The following language appeared in capital letters at the bottom of the first page of the form:  "IMPORTANT NOTICE ON PAGE 4. READ BEFORE SIGNING."  The notice on page four of the form provides:

"**To the alleged parent of the child:**

"As the child's alleged parent, you will not get services to help you get your child back.  You will not automatically get the child to live with you or your relatives.

"If the judge finds that you are the child's parent, the judge may order services to help you get the child back, but does not have to order services for you.

---

[5]  Judicial Council form JV-505 has grown in length since an earlier panel of this court described it in *Paul H.* and attached a copy of it as an appendix to the opinion (*Paul H., supra*, 111 Cal.App.4th at pp. 763-764), but the descriptions of the form in *Paul H.* accurately characterize relevant portions of the form that the social worker sent to C.B. with the June 17 letter.

"If you say that you are not the child's parent and will not take a test to find out if you are the parent, and do not want services to help you get the child back, you can fill out this form and not be a part of this case.

"You can have a trial and ask the judge to decide if you are the child's parent. You can pay a lawyer to be at the trial. If you cannot afford a lawyer, the judge may appoint one for you for free. At a trial, you can ask witnesses questions and give evidence to the judge.

"If you want the court to decide if you are the child's parent, fill out this form."

At the June 21 combined jurisdiction and disposition hearing, counsel for the Agency and the juvenile court discussed the Agency's declaration of due diligence in trying to locate C.B. The filed declaration reflects the Agency began searching for C.B. on June 9, and that on that date three different sources of information (including Medi-Cal, California's Medicaid program) indicated the same active address for C.B., which was the address noted in the June 16 disposition report and to which the social worker sent the June 17 letter and Judicial Council form JV-505. The court continued the combined jurisdiction and disposition hearing for one week. On June 23, the Agency filed an amended dependency petition alleging the minor came within section 300, subdivision (b), and C.B. was identified as the father. At the June 28 continued combined jurisdiction and disposition hearing, the juvenile court noted C.B. was an alleged father and scheduled a contested disposition hearing for July 13. The record indicates that neither a copy of the amended petition nor notice of the two late-June hearings were mailed to C.B.

At the July 13 contested disposition hearing, the juvenile court sustained the allegations in the amended petition, bypassed reunification services for mother, and scheduled the section 366.26 hearing for October. C.B. was not present at the July 13 contested disposition hearing and the record indicates notice of it was not mailed to him.

6

## III

*C.B.'s Interactions with the Agency, the Minor, and the Results of His Paternity Test*

On August 18, C.B. had a supervised visit with the minor and took a paternity test. For roughly the next 18 days, a social worker and C.B. exchanged multiple text messages regarding C.B.'s willingness to meet in person to discuss what he wanted to do if he was the minor's biological father and whether the results of the paternity test had been received by the Agency. On September 6, a social worker tried to call C.B. to tell him that he was indeed the minor's biological father.

In a September 8 telephone conversation with a social worker, both C.B. and his mother asked what they needed to do to bring the minor into their home(s). The social worker told C.B. "he would have to talk to his attorney about [the] next steps and due to being so far into the case and [the minor] being a dependent of the court, [C.B.] would have to be assessed by [the Agency] to determine if he is in fact a safe parent for [the minor] to go home to." The social worker also told C.B. that there would be a hearing on September 13 at which his paternity would be addressed, and an attorney would be appointed for him. On the same day, September 8, the Agency filed a request to calendar a hearing on September 13 to address paternity, and mailed a copy of its request to C.B.

On September 13, C.B.'s mother left a voicemail informing a social worker that she and C.B. would be unable to attend the hearing that day. At the hearing that day, the juvenile court found C.B. was the minor's biological father and appointed counsel for him. Addressing counsel, the court said: "I will appoint you as his attorney for purposes of allowing you to meet with him and see if you are going to move to have me possibly designate him in any other category."

On September 20, the juvenile court held a hearing on the Agency's request to have C.B. served a notice of the section 366.26 hearing through his counsel. After counsel for C.B. stated he did not object, counsel for the Agency said: "For the Court's information we will try to serve him, he has obviously been ducking us and [has] not

7

[been] particularly cooperative, but we have run out of [] time." The court granted the Agency's request.

IV

*Section 366.26 Report*

On November 15, the Agency filed a section 366.26 report recommending termination of mother's and C.B.'s parental rights with a permanent plan of adoption. The report noted that C.B. had an active warrant for arrest and was assumed to be living with his mother, who "expressed interest in placement" of the minor. The report also noted that C.B. had one supervised visit with the minor in August and that the Agency "reached out to [C.B.] in regards to scheduling visitation, however, [C.B.] ha[d] not accepted." The record indicates a copy of this section 366.26 report was not sent to C.B.

V

*Section 388 Petitions*

On November 15, appointed counsel for C.B. filed a request to change a court order pursuant to a section 388 petition (using Judicial Council form JV-180),[6] asking the juvenile court to order visitation for C.B. "as well as whatever reunification services . . . would be helpful." Counsel argued that though the case "began on 4/21/22," C.B. "was not named a potential father until 8/11/22," and "has not been given the opportunity to visit with [the minor] or receive services." Counsel asserted the minor "deserves a chance to have a relationship" with her biological father. The juvenile court denied the request without holding a hearing.

Later, C.B. hired a new attorney who filed a second section 388 petition on November 30 asking for six months of reunification services with the goal of being reunited with the minor. This second section 388 petition included an attachment with

---

[6] The purpose of the petition is to "change, modify, or set aside any order of court previously made." (§ 388, subd. (a).)

8

more factual detail than the first section 388 petition, including assertions that the minor's mother never told C.B. about her pregnancy, and that he would have appeared at the September 13 hearing and requested reunification services if he knew that failure to do so would implicate his right to raise his daughter. "I am prepared to be a parent," and "I can keep my child safe now because I have the help of my mother," C.B. maintained.

At a December 6 hearing, the juvenile court denied C.B.'s request for a hearing on the second section 388 petition and summarily denied the petition, explaining: "No hearing is needed. I've already looked at this issue and denied it in the past."

## VI

### *Section 366.26 Hearing*

In his opening statement at the beginning of the contested section 366.26 hearing held on January 4, 2023, counsel for C.B. "demand[ed] notice of the right to be heard." C.B. "doesn't feel like he has had the notice or the right to be heard. He is a non-offending non-custodial father of the child and he has been denied his right to fundamental due process. Jurisdiction detention hearings were scheduled before he was even identified as a biological father and we are rushing towards a permanent plan without assessment and evaluations of the father." Counsel argued that if C.B. "had been informed of being the biological father earlier he could have taken steps to be at hearings . . . to become the presumed father."

The juvenile court responded to C.B.'s counsel's opening statement later in the hearing: "[L]et me address now a statement you made in your opening and I find that notice and opportunity to be heard is satisfied by the fact that we are conducting a contested [section 366.26] hearing today." The court terminated the parental rights as to both mother and C.B.

C.B. filed a timely notice of appeal. This court later granted C.B.'s request to construe the notice of appeal to include the December 6 denial of the second section 388 petition.

DISCUSSION

I

*Legal Background*

Generally, there are three basic types of fathers in dependency law: presumed, biological, and alleged. A presumed father is afforded the most rights in dependency proceedings, followed by a biological father, who " 'has established his paternity but has not established his qualification as a presumed parent.' " (*In re A.H.* (2022) 84 Cal.App.5th 340, 349-351 (*A.H.*).) An alleged father is just that—a man alleged to be the father, but who has not yet established either presumed father status or biological paternity. A presumed father is afforded standing, the appointment of counsel, and reunification services, while a biological father's access to appointed counsel and services is discretionary. An alleged father has a constitutionally protected due process right to be given notice and an opportunity to appear, to assert a position, and to attempt to change his paternity status. (*Ibid*.)

In juvenile dependency proceedings, notice is both a constitutional and statutory duty, "with the constitutional dimension requiring ' "notice that is reasonably calculated to advise [parents] an action is pending and afford them an opportunity to defend." ' " (*A.H., supra*, 84 Cal.App.5th at pp. 363-364.) A parent's fundamental right to adequate notice and the opportunity to be heard in dependency matters involving potential deprivation of the parental interest has little value " ' " 'unless that parent is advised of the *nature* of the hearing giving rise to that opportunity, including what will be decided therein. Only with adequate notice can one choose to appear or not, prepare or not, and to defend, or not.' " ' " (*Id.* at p. 363.) Without notice, an alleged father "will be uninformed of his right to participate and thus unable to elevate his status to presumed parent, to be afforded the opportunity to visit with his child, to receive any services needed to reunify and to protect his rights to custody or an ongoing relationship with his child." (*Id.* at pp. 362-363.)

10

"[A]n alleged father's rights (and/or corresponding duties on the part of the state), fall into essentially four categories: (1) the right to notice of the proceedings and of certain hearings (see [ ] §§ 290.1, 290.2, 291, 294, subd. (a)(2)); (2) the right to notice of their rights as an alleged father and the steps necessary to elevate their status to that of a presumed father (see § 316.2, subd. (b)); (3) the court's corresponding duty to inquire into an individual's possible parentage through various extrinsic sources apart from the individual's own self-reporting (see § 316.2, subd. (a)); and (4) if the whereabouts of an alleged father are unknown, the state's constitutional duty to exercise reasonable diligence to find him, so that he may be given proper notice of the proceedings." (*A.H., supra*, 84 Cal.App.5th at p. 350, fn. omitted.) This case implicates the first three categories of an alleged father's rights.

A.     *Juvenile Court's Duty to Determine Parentage*

"[J]uvenile courts have a duty to determine a child's parentage at the earliest opportunity, imposed both by statute and under the Rules of Court. [¶] Section 316.2 states that '[a]*t the detention hearing, or as soon thereafter as practicable*, the court shall inquire of the mother and any other appropriate person as to the identity and address of all presumed or alleged fathers' . . . (§ 316.2, subd. (a), italics added.)" (*A.H., supra*, 84 Cal.App.5th at p. 363.) Section 316.2 also provides that the "presence at the hearing of a man claiming to be the father shall not relieve the court of its duty of inquiry" (§ 316.2, subd. (a)), and requires the juvenile court to "note its findings" regarding the parentage inquiry "in the minutes of the court" (*id*., subd. (f)).

"[California Rules of Court, rule] 5.635 imposes a *continuing* duty on the juvenile court to inquire about parentage *at every hearing* from the very beginning of a dependency case until the question of parentage has been resolved; it specifies steps the court must take to address the issue of parentage with every person present at each hearing and with local child support authorities; and, if there has been no prior determination of parentage, it requires the court to make such a determination." (*A.H.,*

11

*supra*, 84 Cal.App.5th at p. 364, fn. omitted, some italics omitted; see Cal. Rules of Court, rule 5.635(b).)

        B.       *Right to Notice of the Proceedings and to Be Advised that the Proceedings Can Result in the Termination of Parental Rights*

An alleged father is "entitled at the earliest possible point to be informed of the *importance of*, and apprised of the statutory method for, seeking presumed parent status. [¶] Specifically, section 316.2 requires the court to give to all men who are identified as an alleged father a statutorily prescribed notice and a statutorily prescribed form containing various advisements that enables them to exercise their rights as an alleged father to assert a claim to parentage. This procedure mandated by section 316.2 *is the statutory means of protecting an alleged father's limited due process to notice and an opportunity to appear* in the case to assert a position and attempt to change his paternity status." (*A.H., supra*, 84 Cal.App.5th at p. 365, italics added; see *Paul H., supra*, 111 Cal.App.4th at p. 760 ["The statutory procedure that protects these limited due process rights is set forth in section 316.2"].)

In relevant part, section 316.2, subdivision (b) states: "If, after the court inquiry, one or more men are identified as an alleged father, each alleged father shall be provided notice at his last and usual place of abode by certified mail return receipt requested alleging that he is or could be the father of the child. The notice shall state that the child is the subject of proceedings under Section 300 *and that the proceedings could result in the termination of parental rights* and adoption of the child. Judicial Council form Paternity—Waiver of Rights (JV 505) shall be included with the notice." (Italics added.)

Rule 5.635(g) of the California Rules of Court places a related and, in some ways, more robust duty explicitly on the clerk of the trial court (unless certain circumstances not pertinent here exist): "If, after inquiry by the court or through other information obtained by the county welfare department or probation department, one or more persons are identified as alleged parents of a child for whom a petition under section 300, 601, or

12

602 has been filed, *the clerk must provide* to each named alleged parent, at the last known address, by certified mail, return receipt requested, *a copy of the petition*, *notice of the next scheduled hearing*, and Statement Regarding Parentage—(Juvenile) (form JV-505)." (Italics added.)[7]

C.      *Right to Notice of Specific Hearings*

"By statute, an alleged father also is entitled to notice of the proceedings and certain hearings. . . .  An alleged father also is statutorily *entitled to notice of the jurisdiction and disposition hearings*, accompanied by an advisement of various rights and a copy of the petition.  (See § 291, subds. (a)(2), (d), (e)(1); *In re Jennifer O.* (2010) 184 Cal.App.4th 539, 546 ['If parents were not present at the detention hearing, they must be personally served with a copy of the petition and notice of the jurisdictional and dispositional hearings served by "certified mail, return receipt requested."  (§ 291, subd. (e)(1).)'].)"  (*A.H., supra,* 84 Cal.App.5th at pp. 367-368, fn. omitted.)

II

*Analysis*

We agree with C.B. that the Agency and the juvenile court failed to comply with the notice and parentage inquiry requirements of the dependency statutes and rules of court, and that these compounded failures deprived him of due process.  (See *A.H., supra,* 84 Cal.App.5th at p. 348 ["the failures on the part of the social service agency and the juvenile court to comply with the due diligence, notice and parentage inquiry requirements of the dependency statutes were so pervasive that they denied due process to the noncustodial alleged father of the child"]; *In re Daniel F.* (2021) 64 Cal.App.5th

---

[7]  Both the original and amended petitions in this matter used Judicial Council form JV-100, which, on page 2 contains the following text in large font:  "**TO PARENT**  [¶] Your parental rights may be permanently terminated.  To protect your rights, you must appear in court and answer this petition."

701, 714 ["the Agency's failure to provide Father with the statutorily required materials denied him adequate notice of his rights and the ability to access procedures for establishing paternity and obtaining reunification services"].)

A.      *Determining Parentage*

Though it had opportunities to do so in hearings on April 21, May 3, and May 17, the juvenile court never "inquire[d] of the mother . . . as to the identity . . . of all . . . alleged fathers." (§ 316.2, subd. (a); see Cal. Rules of Court, rule 5.635(b) [continuing duty to inquire of the minor's parents as to the identity of any alleged parents of the child].) This failure occurred even though (1) D.C. was designated as only an alleged father when dependency proceedings began and never elevated his status and (2) when D.C. requested a paternity test on May 3, the court observed the request indicated "some kind of doubt" as to the minor's paternity. C.B. was identified as an alleged father after the Agency learned on May 31 that D.C. was not the minor's biological father, and a social worker asked mother who the biological father might be.

B.      *The Proceedings and their Import*

Neither the Agency nor the clerk of the trial court complied with their respective duties to *adequately* inform C.B. of the dependency proceedings and what was at stake. The Agency's June 17 letter to C.B., which was not sent by certified mail, as the statute requires, informed him that he might be the biological father of a minor in dependency proceedings, asked him to contact a social worker, and was accompanied by Judicial Council form JV-505. The letter did not contain the statutorily required language informing C.B. "that the proceedings could result in the termination of [his] parental rights and adoption of the child." (§ 316.2, subd. (b).) Without that warning, the notice of dependency proceedings was inadequate because it is the *combination* of that warning *along with* Judicial Council form JV-505 that provides adequate notice to an alleged father. Under the statute, neither is sufficient by itself. (See § 316.2, subd. (b) ["Judicial Council form Paternity—Waiver of Rights (JV 505) shall be *included with the notice*"

14

(italics added)]; *A.H., supra*, 84 Cal.App.5th at p. 366 ["The Department failed to comply with *either* of the requirements of section 316.2, subdivision (b)" (italics added)]; *Paul H., supra*, 111 Cal.App.4th at p. 761 ["The procedures set forth in section 316.2, subdivision (b) . . . provide an alleged father with the notice to which he is entitled].)[8]

This error was consequential, because it kept C.B. uninformed "of the significance of the case" and of "his right to *attempt* to prevent the court from severing all legal ties between him and the child he claims as his daughter." (*A.H., supra*, 84 Cal.App.5th at p. 375; see *id.* at p. 367 ["[e]ven in cases where alleged fathers have actually appeared in a dependency case, appellate courts have reversed orders entered late in the dependency case—including orders terminating parental rights—for the juvenile court's failure to give an alleged father the statutorily required notice *and* form under section 316.2" (italics added)].) C.B. was designated an alleged father in the June 16 disposition report in which C.B.'s address also appears. Yet there is nothing in the record indicating that the clerk of the trial court thereafter complied with rule 5.635(g) of the California Rules of Court by providing to C.B. (by certified mail) a copy of the original petition, the amended petition filed on June 23, or "notice of the next scheduled hearing."

C.      *Specific Hearings*

The record indicates that, even after he was designated an alleged father and an address for him was known, C.B. was not given notice of multiple important hearings,

---

[8] We note that the "notice" on page four of the Judicial Council form JV-505 that the Agency mailed to C.B., and to which the bottom of page one of the form directs the reader's attention, does not approximate the language mandated by section 316.2, subdivision (b). The closest any part of the form comes to the mandatory language is in item 2(c), which corresponds to the box to be checked if the recipient wishes to declare: "I am not the parent of this child." Item 2(c) says: "If the child cannot be returned to a custodial parent or guardian, it is possible that all parental rights will be terminated and the child will be adopted."

15

including the combined jurisdiction hearings on June 21 and June 28 and the contested disposition hearing on July 13.  (See § 291, subds. (a)(2), (d), (e)(1).)

D.      *The Agency's Arguments Lack Merit*

The Agency contends C.B.'s due process argument is untimely and forfeited and lacks merit.  We disagree.

1.      *Untimeliness and Forfeiture of C.B.'s Arguments*

The Agency contends C.B.'s "appeal from the jurisdictional hearing, dispositional hearing and setting of the . . . § 366.26 hearing is not timely" because appeals from jurisdictional and dispositional findings must be made 60 days after disposition and the setting of a section 366.26 hearing must be contested by a writ.  The Agency also contends the "waiver rule" and forfeiture principles apply to C.B.'s appeal because he "had numerous opportunities to raise" his arguments with the juvenile court.

The purpose of the forfeiture rule is "to balance the parents' interest in the care and custody of their children with the children's interest in the expeditious resolution of their custody status."  (*In re T.G.* (2015) 242 Cal.App.4th 976, 984.)  But the rule "must not be applied if 'due process forbids it.' "  (*Id.* at p. 985; see *In re Janee J.* (1999) 74 Cal.App.4th 198, 208.)  For the due process exception to the forfeiture rule to apply, the parent must show there was a defect in the proceedings that "fundamentally undermined the statutory scheme" so as to prevent the parent "from availing himself or herself of the protections afforded by the scheme as a whole."  (*Janee J.,* at p. 208.)  Here, C.B.'s due process challenge is not forfeited on appeal.  And even if it were, we would excuse it.

C.B. did not receive proper notice of the jurisdictional and dispositional hearings, and did not receive proper notice of the *importance* of those hearings.  Nevertheless, both before the contested section 366.26 hearing and at the beginning of that hearing, C.B. raised concerns (to varying degrees of specificity) in the juvenile court.

In the section 388 petition filed on November 30, C.B. asserted mother did not tell him about her pregnancy, indicated he was never informed about the serious nature of the

16

dependency proceedings, requested reunification services, and stated his intent and desire to parent the minor. At a December 6 hearing, the juvenile court denied C.B.'s request for a hearing on the petition and summarily denied the petition. At the contested section 366.26 hearing, C.B.'s counsel claimed C.B. had "been denied his right to fundamental due process. Jurisdiction detention hearings were scheduled before he was even identified as a biological father and we are rushing towards a permanent plan without assessment and evaluations of the father." The juvenile court rejected C.B.'s due process argument on the merits at the contested section 366.26 hearing, saying, "notice and opportunity to be heard is satisfied by the fact that we are conducting a contested [section 366.26] hearing today."

Setting aside the Agency's position that we should reject C.B.'s challenges to orders he was not properly told about and did not timely know about, we conclude that C.B.'s efforts described above reflect that, to the extent he could do so, he timely raised below the defects he raises in this appeal. (Cf. *In re Daniel F., supra*, 64 Cal.App.5th at p. 711 [" 'A juvenile court may summarily deny a section 388 petition without an evidentiary hearing, but "a petition must be liberally construed in favor of its sufficiency [citation] and a hearing may be denied only if the application fails to reveal any change of circumstance or new evidence which might require a change of order" ' "].)

And assuming for the sake of argument that C.B. did *not* timely raise his due process challenges in the juvenile court, we would excuse that failure in light of the fundamental due process issues implicated by this appeal. (See *In re Christopher L.* (2020) 56 Cal.App.5th 1172, 1183, fn. 4 ["We need not determine whether Father forfeited these arguments, however, because even if he did, we would exercise our discretion to address Father's appeal, which raises fundamental due process issues"].)

2.      *Waiver of Right to "Contest Jurisdiction"*

The Agency also argues that "[b]y appearing in th[e] matter . . . [C.B.] waived his right to contest the jurisdiction of the court," citing *In re B.G.* (1974) 11 Cal.3d 679, 689.

*B.G.* is inapposite. In that decision, our Supreme Court ruled that a mother "waived her right to challenge . . . [an] order establishing the jurisdiction of the juvenile court," by (a) "impliedly recognizing the jurisdiction of the court to issue a dispositive order" and (b) "stipulat[ing] that the juvenile court did have personal jurisdiction over her" rather than (c) "seek[ing] to . . . challenge the validity of the . . . order." "The stipulation and waiver cure[d] any jurisdictional defect in the . . . proceedings," our Supreme Court held. (*Ibid.*) Here, the issue is not whether the juvenile court had jurisdiction to issue orders in the matter or had personal jurisdiction over C.B. The issue is whether C.B. was given adequate notice and opportunity to appear, assert a position, and attempt to change his paternity status.

### 3. *Due Process Violation*

The Agency contends C.B.'s due process rights were not violated, because (1) though the juvenile court did not "go into detail as outlined by" section 316.2, subdivision (a), mother "did not mention C.B. when asked if there was anything further" at the May 3 initial jurisdiction hearing; (2) "there was never any confirmation that the address that [the Agency] had" for C.B. "was correct," and C.B. had not contacted the Agency by the time the section 366.26 hearing was set on July 13, so the Agency "did not know how to reach him"; (3) C.B. "avoided" the Agency, perhaps because there was a warrant for his arrest; and (4) "[s]ending notice of confidential hearings" to C.B.'s unconfirmed address "could have violated the minor's confidentiality" under section 827.

These arguments are unpersuasive. At the May 3 hearing (the same hearing at which the court observed that D.C.'s request for a paternity test evidenced "some kind of doubt") the juvenile court asked D.C. and mother if there was "[a]nything more" either of them "want[ed] [the court] to hear on the parentage inquiry." Such an open-ended question does not satisfy the mandate of section 316.2, which places affirmative duties on the juvenile court *specifically* to "inquire . . . as to the identity and address of all presumed or alleged fathers" (§ 316.2, subd. (a), italics added) and to "note its findings"

18

regarding that inquiry "in the minutes of the court" (*id.*, subd. (f)). Second, under the relevant statutes and rules of court, the juvenile court and the Agency are required to send the notice of dependency proceedings to an alleged father's "last and usual place of abode" (§ 316.2, subd. (b)) and "last known address" (Cal. Rules of Court, rule 5.635(g)), not last *confirmed* place of abode or last *confirmed* address. Third, the Agency's assertion C.B. "avoided" it is forfeited because it lacks adequate citation to the record. (*Miller v. Superior Court* (2002) 101 Cal.App.4th 728, 743.) Fourth, section 827 does not support the proposition that sending notice of a confidential hearing to an "unconfirmed" address is at all improper. Section 827 limits who is allowed to "inspect[ ]" a "case file." Facilitating an alleged father's appearance at a dependency hearing is a far cry from allowing him to inspect a case file in this context.

### 4. *Disentitlement Doctrine*

The Agency argues C.B. "is disentitled from requesting relief" because he "purposefully hid himself" from the Agency and from the court process.

The disentitlement doctrine allows an appellate court to dismiss an appeal by a party who has refused to obey the juvenile court's order being appealed and/or engaged in "egregious" conduct that frustrates the juvenile court from carrying out its orders. "Appellate disentitlement 'is not a jurisdictional doctrine, but a discretionary tool that may be applied when the balance of the equitable concerns make it a proper sanction.' " "In dependency cases, the doctrine has been applied only in cases of the most egregious conduct by the appellant, which frustrates the purpose of dependency law and makes it impossible to protect the child or act in the child's best interests." (*In re E.M.* (2012) 204 Cal.App.4th 467, 474, 477-478.)

First, this argument is forfeited because it lacks adequate citation to the record. (*Miller v. Superior Court, supra*, 101 Cal.App.4th at p. 743.) Second, the Agency concedes C.B. did not violate any orders. That leaves "egregious conduct" as the only proper basis to invoke the doctrine. Even if the Agency *had* provided adequate citations

19

to the record supporting its characterizations of C.B.'s conduct, we would not exercise our discretion to sanction C.B. in this appeal. C.B.'s alleged conduct was not egregious under the circumstances of the case, and the fundamental due process violations he suffered must not go unremedied. (Cf. *In re Baby Boy M*. (2006) 141 Cal.App.4th 588, 597-598 ["Under the circumstances we decline to expand the disentitlement doctrine to preclude the appeal of a recalcitrant parent, who, despite her initial lack of cooperation, has violated no court order and who presents a threshold question concerning the subject matter jurisdiction of the juvenile court"].)

E. *Prejudice*

The Agency contends any error was harmless, in part because C.B. "could not be a presumed father." We disagree.

"To demonstrate prejudice, the record does not need to show that an alleged father would be elevated to presumed father status, 'because a biological father may get services if doing so is in the child's best interest. (§ 361.5, subd. (a).) . . . Further, such a man may take the child into his home to establish presumed father status.' [Citation.] Here, at a minimum, it is reasonably probable that had [C.B.] been located sooner and advised of his rights as an alleged father, he would have stepped forward, obtained counsel and demonstrated a basis to obtain services as at least a biological father." (*A.H., supra*, 84 Cal.App.5th at p. 372, italics omitted; see *Paul H., supra*, 111 Cal.App.4th at pp. 761-762 [because "minimal information" was before the juvenile court regarding the alleged father's circumstances and background, the appellate court could not assume that if the alleged father had established his paternity and obtained counsel, he would not have received reunification services].)

F. *C.B.'s Other Challenges and His Pending Motion*

Our resolution of C.B.'s due process claim makes it unnecessary to address his other appellate claims. Similarly, we deny as unnecessary C.B.'s motion to take additional evidence under section 909 of the Code of Civil Procedure.

20

G.      *Mother's Appeal*

Mother declined to file her own opening brief, choosing instead to join in C.B.'s opening brief arguments.  Mother contends that "reversal of the order terminating [C.B.'s] parental rights also requires reversal of the order terminating Mother's parental rights."  The Agency does not dispute mother's contention.

## DISPOSITION

The January 4, 2023 order of the juvenile court terminating C.B.'s and mother's parental rights is vacated and the matter is remanded to the juvenile court to comply with the provisions set forth in section 316.2 and California Rules of Court, rule 5.635, and to determine whether C.B. is the minor's presumed parent if he so requests.  Our decision is without prejudice to C.B. filing an appropriate motion(s) pursuant to section 388 on remand to challenge any additional orders and/or findings previously entered against him, including but not limited to the jurisdictional findings and orders, dispositional findings and orders, and prior determinations of parentage.


_____/s/_____
BOULWARE EURIE, J.

We concur:


_____/s/_____
DUARTE, Acting P. J.


_____/s/_____
WISEMAN, J.*

---

\* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Filed 1/30/24

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| In re A.K., a Person Coming Under the Juvenile Court Law. | C097776 |
| CALAVERAS COUNTY HEALTH AND HUMAN SERVICES AGENCY, | (Super. Ct. No. 22JD6438) |
| Plaintiff and Respondent, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| v. | |
| T.K. et al., | |
| Defendants and Appellants. | |

The opinion in the above-entitled matter filed on January 18, 2024, was not certified for publication in the Official Reports.  For good cause it now appears the opinion should be published in the Official Reports, and it is so ordered.


FOR THE COURT:


        /s/
DUARTE, Acting P. J.



        /s/
BOULWARE EURIE, J.



        /s/
WISEMAN, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

EDITORIAL LISTING

APPEAL from a judgment of the Superior Court of Calaveras County, David M. Sanders, Judge.  Reversed.

Mara L. Bernstein, under appointment by the Court of Appeal, for Plaintiff and Appellant C.B.

Lelah S. Fisher, under appointment by the Court of Appeal, for Plaintiff and Appellant T.K.

Julie Spoljaric, Deputy County Counsel, for Plaintiff and Respondent.